986 F.2d 387
 40 Soc.Sec.Rep.Ser. 135, Medicare & Medicaid Guide
P 41,424
Julie DELANEY, Plaintiff-Appellant,
v.
Victor R. CADE, D.O.; St. Joseph Memorial Hospital;
Central Kansas Medical Center, Defendants-Appellees,
and
L.G. Stephenson & Co., Inc., Defendant.
 No. 91-3358.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 18, 1993.
 
 Dwight A. Corrin, Corrin & Krysl, Wichita, KS, for plaintiff-appellant.
 Robert G. Martin (Alisa M. Arst, with him on the briefs), McDonald, Tinker, Skaer, Quinn & Herrington, Wichita, KS, for defendant-appellee Victor R. Cade, D.O.
 Anne M. Hull (Eldon L. Boisseau and Brian C. Wright with her on the briefs), Turner and Boisseau, Wichita, KS, for defendants-appellees St. Joseph Memorial Hosp. and Cent. Kansas Medical Center.
 Before SEYMOUR and MOORE, Circuit Judges, and BURCIAGA, District Judge.*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 This is a medical malpractice action in which the plaintiff, Julie Delaney, appeals the district court's grant of partial summary judgment for Dr. Victor R. Cade and full summary judgment for St. Joseph Memorial Hospital and Central Kansas Medical Center. Ms. Delaney sued to recover damages for negligent medical care by the defendants, claiming Dr. Cade's treatment deprived her of a significant chance of a better recovery from her permanent injuries. The district court held Kansas does not recognize a cause of action for loss of chance of recovery, and, even if Kansas allowed this cause of action, Ms. Delaney cannot demonstrate the defendants deprived her of an appreciable chance of recovery. Delaney v. Cade, 756 F.Supp. 1476, 1484 (D.Kan.1991). Ms. Delaney also sought damages for the defendants' alleged violations of 42 U.S.C. § 1395dd, the Emergency Medical Treatment and Active Labor Act (the Act). The district court found the facts of this case did not support a claim against the hospital defendants under 42 U.S.C. § 1395dd, and the Act did not provide a private cause of action against physicians. Id. at 1486. Ms. Delaney appeals these findings.
 
 
 2
 We conclude the evidence may support an action against the hospital under § 1395dd, but the Act does not create a private cause of action against physicians; therefore, we reverse in part and affirm in part the judgment dismissing the case on those grounds. Because the issue of significant chance of a better recovery raised here is a case of first impression in Kansas, we believe it should be directed to the Kansas Supreme Court for resolution. We shall do so by separate order.
 
 I. BACKGROUND
 
 3
 On November 22, 1986, Ms. Delaney was seriously injured when her automobile collided with another car.[1] An ambulance transported her to St. Joseph Memorial Hospital in Larned, Kansas. When Ms. Delaney arrived at St. Joseph, she was complaining of chest pain. Dr. Cade, a member of St. Joseph's staff and the physician on call on November 22, sutured the lacerations on her knees but did not perform a physical examination or order x-rays or other treatment.
 
 
 4
 After two hours at St. Joseph, Dr. Cade transferred Ms. Delaney to Central Kansas Medical Center (CKMC) in Great Bend. When she left St. Joseph, she had feeling and movement in her legs but had lost that feeling by the time she arrived at CKMC. Doctors at CKMC provided medical care to Ms. Delaney and then transferred her to the University of Kansas Medical Center in Kansas City.
 
 
 5
 At K.U. Medical Center, an aortagram was performed which revealed Ms. Delaney had a transected aorta which had clotted. Although she underwent surgery to repair the transected aorta, Ms. Delaney is now paralyzed permanently. In her federal suit, Ms. Delaney claimed Dr. Cade's treatment and his delay in transferring her to a facility that was equipped to treat her injuries deprived her of a significant chance of better recovery from her permanent injuries.
 
 
 6
 The court must review the grant or denial of summary judgment de novo, applying the same legal standard as the district court. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990) (citing Barnson v. United States, 816 F.2d 549, 552 (10th Cir.), cert. denied, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987)). Summary judgment is appropriate when there is no dispute over a genuine issue of material fact "and the moving party is entitled to judgment as a matter of law." Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.1991). The court will review the record in the light most favorable to the party opposing the motion. Id. (citing Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988)).
 
 
 7
 II. WHETHER KANSAS LAW RECOGNIZES A CAUSE OF ACTION FOR LOSS
 
 OF CHANCE OF RECOVERY
 
 8
 In Roberson v. Counselman, 235 Kan. 1006, 686 P.2d 149 (1984), the Kansas Supreme Court recognized a cause of action for loss of chance to survive. There the plaintiff brought a medical malpractice action against a chiropractor, alleging he was professionally negligent in failing to recognize his patient was experiencing symptoms consistent with acute heart disease and in failing to refer the patient to a medical doctor. The chiropractor's negligence, the plaintiff argued, "substantially reduced deceased's chance of surviving the heart attack which took his life within hours after he had received chiropractic treatment." Id. 686 P.2d at 150. One of the plaintiff's experts testified if the decedent had received in-hospital treatment for the heart attack, he had a nineteen percent chance of dying. Without proper treatment, his chance of dying was twenty-five percent. Thus, the failure to receive medical treatment reduced his chances of survival from eighty-one to seventy-five percent. Another expert maintained the failure to receive proper treatment reduced his chances of survival from forty to zero percent. The Kansas District Court concluded the evidence on causation was insufficient to constitute a submissible jury question.
 
 
 9
 On appeal to the Kansas Supreme Court, the sole issue was whether the plaintiff offered sufficient evidence of causation. First, the Court explained Kansas applies the substantial factor test of causation. Under this test a plaintiff must show " 'it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the harm.' " Id. at 152 (quoting Restatement (Second) of Torts § 433B, cmts. a and b (1965)). Then, after reviewing several loss of chance to survive cases from other jurisdictions, the Court held:
 
 
 10
 The question of causation in cases involving negligent treatment of a potentially fatal condition ... is generally a matter to be determined by the finder of fact where the evidence has established the patient had an appreciable chance to survive if given proper treatment. In making the determination, the finder of fact should take into account both the patient's chances of survival if properly treated and the extent to which the patient's chances of survival have been reduced by the claimed negligence.
 
 
 11
 Id. at 159. Based on the expert testimony, the Roberson Court concluded the plaintiff presented sufficient evidence to preclude summary judgment and "[w]hether the negligence of defendant was a substantial factor in Mr. Roberson's death is a matter for determination by a jury." Id. at 160. The Court illuminated its reasoning:
 
 
 12
 There are sound reasons of public policy involved in reaching this result. The reasoning of the district court ..., in essence, declares open season on critically ill or injured persons as care providers would be free of liability for even the grossest malpractice if the patient had only a fifty-fifty chance of surviving the disease or injury even with proper treatment. Under such rationale a segment of society often least able to exercise independent judgment would be at the mercy of those professionals on whom it must rely for life-saving health care.
 
 
 13
 Id.
 
 
 14
 Since Roberson, only the Kansas Court of Appeals has considered a loss of chance cause of action. In Donnini v. Ouano, 15 Kan.App.2d 517, 810 P.2d 1163, 1165-66 (1991),[2] the decedent's wife and estate brought a medical malpractice suit against his physician based on the failure to detect kidney cancer. Plaintiffs alleged two alternative theories at trial: (1) the doctor's negligence was the probable cause of the decedent's injuries and death, and (2) the doctor's negligence "deprived the decedent of a substantial possibility of recovery from the cancer." Id. 810 P.2d at 1166. After a second trial on liability, the jury found the decedent's chances for survival with proper care, were fifty-five percent but were zero with the care actually given.
 
 
 15
 The Court of Appeals held the jury's finding the decedent had a fifty-five percent chance of survival had he received proper medical care indicated the jury found the doctor's negligence was the cause in fact of the decedent's death. Based on this finding, the court concluded the jury found negligence "under traditional survival/wrongful death law not 'loss of chance,' " although both theories went to the jury. Id. at 1167. The Donnini court explained:
 
 
 16
 The "loss of chance" rule is an exception to the normal requirement of proving causation. In Roberson v. Counselman, 235 Kan. 1006, 686 P.2d 149 (1984), the court recognized the "loss of chance" cause of action applies when a doctor's negligence eliminates or substantially reduces a patient's chance of survival.
 
 
 17
 ....
 
 
 18
 A cause of action in which the patient had a greater than 50 percent chance of surviving does not fall under the causation rule from Roberson.
 
 
 19
 Id. 810 P.2d at 1167, 1168. In such a case, traditional negligence causation rules apply.
 
 
 20
 Three federal district courts have considered the loss of chance cause of action under Kansas law. In Boody v. United States, 706 F.Supp. 1458, 1459 (D.Kan.1989), the plaintiff brought a medical malpractice action under the Federal Tort Claims Act on behalf of his deceased wife. He alleged a physician acted negligently in failing to properly read an x-ray and detect lung cancer at an early stage. The plaintiff's expert testified the decedent would have had a fifty-one percent chance of surviving five years if diagnosed at the time the defendant failed to detect cancer. A year later, when doctors discovered cancer, decedent had a very slight chance of surviving five years. Thus, the expert maintained, the doctor's actions significantly diminished the chance of surviving five years. The court applied Roberson's "reduced standard of causation" and held the defendant's negligence deprived decedent of an appreciable chance to survive. Id. at 1463.[3]
 
 
 21
 The plaintiff in Borgren v. United States, 716 F.Supp. 1378, 1382 (D.Kan.1989), claimed her physicians negligently failed to diagnose the likelihood of breast cancer and to recommend a biopsy. The court found the doctor's negligence caused a three year delay in treatment and significantly decreased the plaintiff's chances of disease-free survival. Specifically, the court concluded plaintiff established, by a preponderance of the evidence, that she had lost a thirty to fifty-seven percent chance of ten year disease-free survival. Id. at 1383. The court awarded the plaintiff damages for pain, suffering, and loss of chance of survival.
 
 
 22
 Finally, in Denton v. United States, No. 87-2536-V, 1990 WL 98335, at * 4 (D.Kan. July 3, 1990), a physician's negligence in failing to transfer the decedent to another medical facility and to consult a specialist caused the decedent to lose an eighty percent chance of survival. The court held this constituted an appreciable chance to survive and awarded damages on a percentage basis equal to the loss of chance.
 
 
 23
 The district court in Ms. Delaney's case, "troubled by the implications of Roberson in all medical malpractice cases," chose to limit the loss of chance theory to actions involving loss of chance of survival. 756 F.Supp. at 1481-82. It stated:
 
 
 24
 The court does not believe Roberson was intended to dramatically change the long established requirement in all medical malpractice cases that the plaintiff demonstrate that the physician's deviation from the minimally accepted standards of the medical profession was more likely than not a substantial factor in causing the plaintiff's injuries. Without clearer indication from the Supreme Court of Kansas, this court is unwilling to extend Roberson and the loss of chance theory beyond survival actions.
 
 
 25
 Id. at 1484.
 
 
 26
 While Ms. Delaney concedes some courts have refused to recognize loss of chance, no court has determined loss of chance only applies in survival actions. Moreover, she asserts, the Roberson rationale extends to loss of chance of recovery cases. The Roberson Court's interest in not declaring "open season on critically ill or injured patients" and leaving them at the mercy of the health care professionals on whom they must rely applies with equal force to patients with a less than fifty percent chance of recovery. Finally, Ms. Delaney notes Roberson discussed two loss of chance cases in which the plaintiff survived. See Jones v. Montefiore Hosp., 494 Pa. 410, 431 A.2d 920, 922, 924 (1981) (plaintiff asserted physicians' and hospitals' negligence caused her to contract cancer and shortened her life; court held trial judge should have instructed jury to impose liability if defendants' conduct increased risk of harm and increased risk was substantial factor in bringing about harm that plaintiff actually suffered); Clark v. United States, 402 F.2d 950, 953-54 (4th Cir.1968) (plaintiff claimed physician's negligent conduct caused loss of a kidney).
 
 
 27
 Consequently, Ms. Delaney has moved to certify the question of whether Kansas recognizes a cause of action for loss of chance of recovery to the Kansas Supreme Court.[4] Because this question has not been addressed by the Kansas courts with sufficient clarity, we are uncomfortable attempting to decide the issue without its further guidance. Consistent with our judicial policy that matters of state law should first be decided by state courts, we grant the motion to certify. A separate order of certification will enter.
 
 
 28
 III. WHETHER THE EVIDENCE DEMONSTRATES MS. DELANEY WAS NOT
 
 STABILIZED UNDER 42 U.S.C. § 1395dd
 AT THE TIME OF HER TRANSFER
 
 29
 Ms. Delaney alleges she was transferred to CKMC in violation of § 1395dd(c).[5] A hospital can violate *392s 1395dd through the operation of its emergency room by failing to stabilize a patient's emergency medical condition before transferring or releasing the patient. Deberry v. Sherman Hosp. Ass'n, 741 F.Supp. 1302, 1305 (N.D.Ill.1990).[6] The definition section of § 1395dd provides:
 
 
 30
 (1) The term "emergency medical condition" means--
 
 
 31
 (A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in--
 
 
 32
 (i) placing the health of the individual ... in serious jeopardy,
 
 
 33
 (ii) serious impairment to bodily functions, or
 
 
 34
 (iii) serious dysfunction of any bodily organ or part;
 
 
 35
 ....
 
 
 36
 (3)(B) The term "stabilized" means, with respect to an emergency medical condition described in paragraph (1)(A), that no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility....
 
 
 37
 42 U.S.C. § 1395dd(e).
 
 
 38
 Few courts have discussed the provisions of § 1395dd. In Burditt v. United States Dep't of Health & Human Servs., 934 F.2d 1362, 1369 (5th Cir.1991), the court held the physician could not have stabilized the patient "unless he provided treatment that medical experts agree would prevent the threatening and severe consequences of [the patient's] hypertension while she was in transit." The Sixth Circuit held a patient was stable when discharged because "[h]e was not in acute distress, neither the doctors nor the patient or his parents made the slightest indication that the condition was worsening in any way, or that it presented any risk that might become life-threatening." Cleland v. Bronson Health Care Group, Inc., 917 F.2d 266, 271 (6th Cir.1990).
 
 
 39
 To determine whether the defendants stabilized Ms. Delaney's medical condition before transfer, all the expert testimony submitted to the district court on the summary judgment motion must be considered. If the testimony, viewed in a light most favorable to Ms. Delaney, indicates a genuine dispute concerning whether material deterioration of her condition was likely to occur during transfer, a jury can consider whether she was stabilized. Deberry, 741 F.Supp. at 1305 ("[T]he definition of 'to stabilize' asks whether the medical treatment and [transfer] was reasonable under the circumstances. This is obviously a factual inquiry....").
 
 
 40
 The district court stated Ms. Delaney "concedes that she was stabilized before being transferred." The court also determined Ms. Delaney was stabilized within the statutory definition of that term before the defendants transferred her to CKMC.
 
 
 41
 On appeal, Ms. Delaney disputes the court's finding she conceded she was stabilized. Indeed, in her memorandum in opposition to summary judgment, Ms. Delaney set forth the fact that she had feeling and movement when she left Larned, but "lost them by the time she got to Great Bend" as one of the "facts in dispute which preclude[s] entry of summary judgment." In the same memorandum, Ms. Delaney presented a brief argument that the hospital's contention there was no violation of § 1395dd ignored "the nature of the violation in this case." Although it is unclear whether she specifically contended she was not stabilized prior to transfer within the meaning of the statute, it does appear that she did not concede the fact of stabilization. Moreover, Ms. Delaney argues the medical evidence concerning the loss of feeling in her legs demonstrates her condition materially deteriorated during her transfer.
 
 
 42
 We believe the state of the evidence puts into question whether at the time of her transport "no material deterioration of [her] condition [was] likely, within reasonable medical probability." 42 U.S.C. § 1395dd(e)(3)(B). Thus, that question is not conceded and raises a material issue of fact. While defendants contend there is no evidence Ms. Delaney's thrombosis was a consequence of her transport, they do not address whether the loss of feeling and function in her legs was the type of "deterioration" the Act seeks to prevent. Nor do they discuss the presence of evidence of whether the loss of feeling and motion would have been foreseeable within a reasonable medical probability. In the absence of clear answers to those questions, we believe the issue whether Ms. Delaney was stabilized has an evidentiary component we cannot resolve. Therefore, we conclude the district court's summary judgment on this claim was premature.
 
 IV. WHETHER 42 U.S.C. § 1395dd
 
 43
 CREATES A PRIVATE CAUSE OF ACTION AGAINST A PHYSICIAN
 
 
 44
 Section 1395dd(d)(1) provides for civil penalties for hospitals and physicians that negligently violate the requirements of the Act. However, § 1395dd(d)(2) states:
 
 
 45
 (2) Civil Enforcement
 
 
 46
 (A) Personal Harm
 
 
 47
 Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.
 
 
 48
 Based on this section, the district court determined the Act creates a civil remedy against hospitals but not against doctors. Ms. Delaney argues the court should follow Sorrells v. Babcock, 733 F.Supp. 1189, 1193-94 (N.D.Ill.1990), in which the district court analyzed the legislative history of the Act and held a plaintiff could bring a federal cause of action against an emergency room physician. But see Lavignette v. West Jefferson Medical Ctr., No. 89-5495, 1990 WL 178708, at * 2 (E.D.La. Nov. 7, 1990) (express language and legislative history of Act indicate Congress did not intend to provide private causes of action against physicians); Jones v. Wake County Hosp. Sys., Inc., 786 F.Supp. 538, 545 (E.D.N.C.1991).
 
 
 49
 The Fourth Circuit addressed this issue in Baber v. Hospital Corp. of Am., 977 F.2d 872, 876-78 (4th Cir.1992), and held the enforcement sections of § 1395dd only allowed the Secretary of Health and Human Services to act against a doctor to prevent participation in Medicare programs and to seek sanctions in the form of civil monetary penalties. The Fourth Circuit found the Act's language did not permit individuals to recover personal injury damages from a doctor. The court also stated the "legislative history makes it clear that, far from intending to allow patients to sue doctors, Congress intentionally limited patients to suits against hospitals." Id. at 876.[7]
 
 
 50
 We agree the plain language of the Act indicates individuals can bring civil actions only against participating hospitals. We therefore affirm this portion of the district court's holding.
 
 
 51
 We shall RETAIN jurisdiction of the portion of this appeal certified to the Kansas Supreme Court until that procedure is concluded. The balance of the district court's judgment is AFFIRMED IN PART AND REVERSED IN PART. Upon receipt of the mandate, the district shall determine whether the interests of the parties are served by proceeding immediately or deferring until resolution of the certified question.
 
 
 
 *
 Honorable Juan G. Burciaga, Chief Judge for the United States District Court for the District of New Mexico, sitting by designation
 
 
 [1]
 As a result of the accident, she suffered numerous injuries, including a transected aorta, lacerated knees, three fractures in the right arm, a broken nose, lacerations on the face, and neck fractures
 
 
 [2]
 The Kansas Court of Appeals decided Donnini after the district court ruled on Ms. Delaney's claims
 
 
 [3]
 The Donnini court found Boody consistent with its holding that Roberson only applies when the patient had less than a fifty percent chance of survival. Donnini, 810 P.2d at 1167. In Boody, the decedent had a fifty-one percent chance of surviving five years, not of being cured
 
 
 [4]
 Ms. Delaney relies on McKellips v. Saint Francis Hosp., Inc., 741 P.2d 467, 469 (Okla.1987), in which the Oklahoma Supreme Court answered certified questions from this court concerning the loss of chance doctrine
 
 
 [5]
 Congress enacted the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, to end "patient dumping." " 'Patient dumping' refers to the practice of a hospital that, despite being capable of providing the needed medical care, transfers patients to another institution or refuses to treat patients because the patient is unable to pay." Sorrells v. Babcock, 733 F.Supp. 1189, 1191 (N.D.Ill.1990) (citing Reid v. Indianapolis Osteopathic Medical Hosp., 709 F.Supp. 853, 853-54 (S.D.Ind.1989)). The district court initially had to determine whether § 1395dd covers cases in which the patient is not transferred for economic reasons. The court, following Cleland v. Bronson Health Care Group, Inc., 917 F.2d 266, 270 (6th Cir.1990), held a plaintiff bringing a claim under § 1395dd is not required to allege he was denied treatment for economic reasons. See Gatewood v. Washington Healthcare Corp., 933 F.2d 1037, 1040-41 (D.C.Cir.1991) (court agrees with Cleland that the statute reaches "any individual" seeking emergency room care, but finds plaintiff's claims of misdiagnosis, without more, are not cognizable under the Act; Act does not create a sweeping federal cause of action with respect to traditional malpractice claims); Deberry v. Sherman Hosp. Ass'n, 741 F.Supp. 1302, 1305 (N.D.Ill.1990). But see Stewart v. Myrick, 731 F.Supp. 433, 436 (D.Kan.1990). Dr. Cade agrees with the district court's conclusion on this issue, and the hospital defendants do not appear to challenge this conclusion
 
 
 [6]
 Section 1395dd(c)(1) provides, "[i]f an individual at a hospital has an emergency medical condition which has not been stabilized (within the meaning of subsection (e)(3)(B) of this section), the hospital may not transfer the individual unless ... (B) the transfer is an appropriate transfer ... to that facility."
 
 
 [7]
 In Gatewood v. Washington Healthcare Corp., 933 F.2d 1037 (D.C.Cir.1991), the D.C. Circuit quoted § 1395dd(d)(2)(A) and stated, in dicta, "[f]rom this, it seems clear that there is no private cause of action against physicians under the Emergency Act." Id. at 1040 n. 1