Christina BIRD and Joseph Bird, parents of Baby Boy James Duane Bird, deceased, and Christina Bird, individually, Plaintiffs,

v.

PIONEERS HOSPITAL, John J. Ryndfleisz, D.O., Janet V. Grant, C.N.M., Women's Health Care of Western Colorado, P.C., Nurse Wendy Hetherington, St. Mary's Hospital and Medical Center, Inc., and Pioneers Hospital Nurses X, Y and Z, Defendants.

No. CIV. A. 99–D–2163.

United States District Court, D. Colorado.

Nov. 3, 2000.

Peter A. Ricciardelli, Telluride, CO, John Grosvenor Salmon, Sarah Jane Mitchell, Salmon, Lampert & Clor, PC, Englewood, CO, for Plaintiffs.

Mark A. Fogg, Christopher K. Miller, Kennedy & Christopher, P.C., Denver, CO, John O. Rauch, Rauch & Van Voorhis, LLC, Denver, CO, Alan E. Richman, Richman & Jones, P.C., Denver, CO, Brian G. McConaty, Catherine Christina Crum, Johnson, Ruddy, McConaty & Sargent, Glendale, CO, Michael T. McConnell, Traci L. Van Pelt, Long & Jaudon, Denver, CO, for Defendants.

## ORDER

DANIEL, District Judge.

THIS MATTER is before the Court on Defendant Pioneers Hospital's Motion to Dismiss, filed June 16, 2000. After fully considering the arguments presented at the motion hearing and the pertinent file materials, the Court concludes that Pioneers' motion should be GRANTED IN PART AND DENIED IN PART.

### I.  Factual Background

Plaintiffs bring claims under the Emergency Medical and Active Labor Act, 42 U.S.C. § 1395dd ("EMTALA") and various tort claims under Colorado law arising out of alleged denial of medical care during Plaintiff Christina Bird's pregnancy. The Amended Complaint alleges, in pertinent part, that Plaintiff Christina Bird ("Bird") awoke at 2:00 a.m. on the morning of January 5, 1999 with regular and intense contractions occurring at three minute intervals and was taken by a relative to the emergency room of Defendant Pioneers Hospital in Meeker, Colorado. At Pioneers, Bird was prepped by attending nurses and a fetal monitor was set up. Defendant Dr. Ryndfleisz ("Ryndfleisz") gave Bird a cursory pelvic examination, noted that she was dilated to three to four centimeters and that contractions were regular and occurring three to five minutes apart. Bird was bleeding when these events took place. Plaintiffs assert that Bird was impecunious and provided her Medicaid information to Pioneers when she was treated on January 5, 1999. Ryndfleisz told Bird to drive to Grand Junction for delivery of the child, but if she had problems, she should stop at the hospital in Rifle, Colorado. Bird was then discharged from Pioneers.

Following her discharge, Bird went home, gathered her necessities, and left in a car for St. Mary's hospital in Grand Junction, Colorado. While en route to St. Mary's, Bird claims she started to deliver her baby in Plaintiffs' car. Complications developed during the delivery which resulted in severe injuries to the baby. The baby died 15 days later.

Plaintiffs' Amended Complaint brings an EMTALA claim against Pioneers for improperly failing to examine Bird, failing to appropriately stabilize Bird's condition prior to her transfer and failing to certify that the benefits of the transfer outweighed the transfer's medical risks to Bird in violation of 42 U.S.C. §§ 1395dd(a)-(d). Plaintiffs also bring negligence and outrageous conduct claims against Pioneers and the other Defendants arising out of Plaintiffs medical treatment between January 1, and January 5, 1999.

### II.  Analysis

#### A.  Standard of Review

As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *Todd Holding Co., Inc. v. Super Valu Stores, Inc.,* 744 F.Supp. 1025, 1026 (D.Colo.1990). Where a party moves to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), the Court must look to the factual allegations of the Complaint. *Groundhog v. Keeler,* 442 F.2d 674, 677 (10th Cir.1971). "[T]he burden is on the party claiming jurisdiction to show it by a preponderance of the evidence." *Celli v. Shoell,* 40 F.3d 324, 327 (10th Cir.1994). "Mere conclusory allegations of jurisdiction are not enough." *U.S. ex rel. Hafter v. Spectrum Emergency Care, Inc.,* 190 F.3d 1156, 1160 (10th Cir.1999).

#### B.  Defendant Pioneers Hospital's Motion to Dismiss

Defendant Pioneers Hospital ("Pioneers") moves to dismiss the claims against it in the Amended Complaint for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). Pioneers argues that the EMTALA and state law claims are claims that lie in tort or could lie in tort and are therefore governed by the Colorado Governmental Immunity Act ("CGIA"), C.R.S. § 24–10–101, *et seq.* Pioneers further contends that it is entitled to sovereign immunity and that Plaintiffs' failure to comply with the CGIA's notice requirements in C.R.S. § 24–10–109 de-

prives this Court of jurisdiction over the claims against it.

In response, Plaintiffs assert that EMTALA preempts the CGIA's notice requirements because said requirements conflict with the intent of Congress in enacting EMTALA. Plaintiffs argue in the alternative that even if EMTALA claims are subject to the notice requirements, Colorado has waived any sovereign immunity to such actions by receiving federal funds from Medicare and Medicaid programs. Finally, Plaintiffs contend that communications to Pioneers regarding Bird's injuries from various third parties during the CGIA's notice period substantially complied with the jurisdictional notice-of-claim requirements of C.R.S. § 24–10–109. I first address the preemption issue.

## 1. Preemption

■ As an initial matter, I note that in its reply to Plaintiffs' response to the motion to dismiss, Pioneers argues EMTALA does not preempt Colorado's sovereign immunity under the Eleventh Amendment to the U.S. Constitution. I find that Pioneers' argument is without merit. "The Eleventh Amendment immunizes states from suits in law or equity, including injunctive relief.... It does not, however, extend to political subdivisions of the state, such as counties or municipalities." *Elam Construction, Inc. v. Regional Transportation District*, 129 F.3d 1343, 1345 (10th Cir.1997). It is undisputed that Defendant has been a county-owned hospital at all times relevant to the complaint allegations. Thus, Pioneers assertion of the sovereign immunity defense to the EMTALA claim is without merit.

Next, I agree with Pioneers that Plaintiffs' EMTALA claim falls within the purview of the CGIA. The CGIA states that "[i]t is the intent of this article to cover all actions which lie in tort or could lie in tort regardless of whether that may be the type of action or the for of relief chosen by the claimant." C.R.S. § 24–10–105. "No public entity shall be liable for such actions except as provided in this article...." *Id.*

Congress enacted EMTALA to address concerns with the growing practice of "patient dumping." *See Delaney v. Cade*, 986 F.2d 387, 392 n. 5 (10th Cir.1993). " 'Patient dumping' refers to the practice of a hospital that, despite being capable of providing the needed medical care, transfers patients to another institution or refuses to treat patients because the patient is unable to pay." *Id.* To fulfill Congress' purpose, the statute requires hospitals to take certain precautions prior to transferring patients, such as stabilizing a patient's medical condition or otherwise determining that a transfer's benefits to the patient outweighs its risks. *See* 42 U.S.C. § 1395dd(a)-(c). The Act further provides for a private cause of action and civil penalties or damages for violations of its provisions. *See id.* § 1395dd(d).

After reviewing EMTALA's provisions and the Amended Complaint, I conclude that the EMTALA claim could sound in tort under the CGIA, since the Act, in essence, imposes a new civil duty on hospitals and provides damages for those injured by its violation or breach. *See Power v. Arlington Hospital Assoc.*, 42 F.3d 851, 864–65 (4th Cir.1994) (holding that EMTALA claim sounds in tort even though the duty violated arises in a federal statute); *see also Root v. New Liberty Hospital*, 209 F.3d 1068, 1069 (8th Cir. 2000). Consequently, the CGIA applies to EMTALA claims.

■ I find, however, that EMTALA nonetheless preempts the CGIA's notice requirement because the state statute, C.R.S. 24–10–109, is potentially in direct conflict with EMTALA's statute of limitations. The Supreme Court has stated that:

[w]hen Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to pre-empt

state laws from the substantive provisions of the legislation.

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (internal citations and quotations omitted); *see also Freightliner Corp. v. Myrick*, 514 U.S. 280, 288, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995).

Congress included an express preemption clause in EMTALA, which states that "[t]he provisions of this section do not preempt any State or local law requirement, except to the extent that the requirement directly conflicts with a requirement of this section." 42 U.S.C. § 1395dd(f). Therefore, under EMTALA's express terms, the statute only preempts state law where it directly conflicts with a provision of the federal Act. Such conflict preemption occurs "either when compliance with both the federal and state laws is a physical impossibility, or when the state law stands as an obstacle to the accomplishments and execution of the full purposes and objectives of Congress." *Keith v. Rizzuto*, 212 F.3d 1190, 1193 (10th Cir.2000) (quoting *Southwestern Bell Wireless Inc. v. Johnson County Bd. of County Comm'rs*, 199 F.3d 1185, 1189–90 (10th Cir.1999)).

The Tenth Circuit has yet to address whether EMTALA preempts the CGIA's notice requirement. Although there is conflict among the Circuits as to whether EMTALA preempts state notice requirements such as those in the CGIA, I find the reasoning of the Fourth Circuit's opinion on this issue in *Power v. Arlington Hospital Association*, 42 F.3d 851 (4th Cir. 1994) persuasive.[1]

In *Power*, the defendant moved to dismiss the plaintiff's EMTALA claim because the plaintiff had violated the state's medical malpractice statute by failing to comply with defendant's request for review by a medical malpractice review panel prior to bringing her suit in federal court. *See Power*, 42 F.3d at 865.[2] The Fourth

---

**1.** Both the Second and Ninth Circuits have taken a broader view of EMTALA's preemption clause and have held that compliance with both notice of claim statutes and EMTALA's statute of limitations is neither physically impossible nor so substantial as to obstruct Congress' purposes. *See Hardy v. New York City Health & Hosp.*, 164 F.3d 789 (2d Cir. 1999); *Draper v. Chiapuzio*, 9 F.3d 1391 (9th Cir.1993). Pioneers relies on this authority to argue that there is no preemption of the CGIA's notice requirements because those requirements are more akin to the notice of claim statutes in *Hardy* and *Draper* than to the Virginia statute in *Power*. I reach the opposite conclusion. *Hardy* and *Draper* are distinguishable from the circumstances presented here because unlike the notice-of-claim statute in C.R.S. § 24–10–109, the statutes in *Hardy* and *Draper* only require timely notice and do not mandate further compliance with any pre-suit procedures. *See* N.Y. Gen. Mun. Law § 50–e (McKinney 2000); Or.Rev.Stat. § 30.275. Therefore, *Hardy* and *Draper* did not address tolling provisions similar to those found in C.R.S. § 24–10–109(5), which I conclude are in conflict with EMTALA's statute of limitations, 42 U.S.C. § 1395dd(d)(2)(C). I thus find that C.R.S. § 24–10–109 is more analogous to the Virginia notice of claim statute in *Power*, which contained similar tolling provisions. *See, e.g., Smith v. Richmond Memorial Hospital*, 243 Va. 445, 416 S.E.2d 689

(1992), *cert. denied*, 506 U.S. 967, 113 S.Ct. 442, 121 L.Ed.2d 361 (1992) (stating that the fact that the Oregon statute only required notice was a "significant distinction" from the Virginia medical malpractice notice of claim statute's tolling provision and that it is this tolling provision that is "in direct conflict with the provisions of [EMTALA].").

**2.** In reaching its decision, the Fourth Circuit relied on the Virginia Supreme Court's decision in *Smith v. Richmond Memorial Hospital*, 243 Va. 445, 416 S.E.2d 689 (1992), *cert. denied*, 506 U.S. 967, 113 S.Ct. 442, 121 L.Ed.2d 361 (1992). In *Smith*, the Virginia Supreme Court held that the medical malpractice notice of claim statute was preempted by EMTALA's statute of limitations provision, 42 U.S.C § 1395dd(d)(3)(C). *See Smith*, 416 S.E.2d at 695. The notice of claim statute in *Smith* prohibited a plaintiff from filing an action until ninety days after the notice had been filed or until after a medical malpractice review panel had reviewed the case. *See id.* The Virginia Supreme Court held that the notice of claim statute directly conflicted with EMTALA's statute of limitations because while the notice of claim statute tolled the state statute of limitations during both the ninety day period following proper notice and any malpractice panel review of the case, the state statute could not toll EMTALA's statute

Circuit stated that the motion to dismiss presented the question of "[w]hether federal law incorporates, expressly or impliedly, a state-mandated procedure with the attendant sanction that the federal right is defeated in the absence of compliance." *Id.* at 866 (quoting *Brooks v. Maryland General Hospital, Inc.,* 996 F.2d 708, 714 (4th Cir.1993)). The court answered this question "in the negative" and stated that it did not read EMTALA's statute of limitations provision as "expressly or impliedly incorporating state-mandated procedural requirements for EMTALA." *Id.*

At the time of the court's decision in *Power,* the Virginia medical malpractice statute tolled the state statute of limitations during compliance with the malpractice statute's procedural requirements.[3] *See id.; Smith v. Richmond Memorial Hospital,* 243 Va. 445, 416 S.E.2d 689 (1992), *cert. denied,* 506 U.S. 967, 113 S.Ct. 442, 121 L.Ed.2d 361 (1992).[4] The court held, however, that the tolling provisions did not apply to a federal statute of limitations when the limitations period was expressly stated in the act creating the fed-

eral right. *See id.* (citing *Holmberg v. Armbrecht,* 327 U.S. 392, 395, 66 S.Ct. 582, 90 L.Ed. 743 (1946)). Consequently, the court concluded that the state statute's procedural requirements are not applicable to an EMTALA claim "[b]ecause Virginia's procedural requirements are potentially in direct conflict with, and therefore inconsistent with EMTALA." *Id.*

I find the reasoning of *Power* to be applicable here. EMTALA's own statute of limitations states that "[n]o action may be brought under [the Act] more than two years after the date of the violation with respect to which the action is brought." 42 U.S.C. § 1395dd(d)(2)(C). The CGIA's notice of claim statute provides that

> Any person claiming to have suffered an injury by a public entity ... shall file a written notice as provided in the section within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury.

> the period of review by the medical review panel.

> The giving of notice of a claim pursuant to § 8.01–581.2 shall toll the applicable statute of limitations for a period of 120 days from the date such notice is given, or for sixty days following the date of issuance of any opinion by the medical review panel, whichever is later.

Va.Code Ann. § 8.01–581.2(A), –581.9 (Michie 1992). The 1993 amendments to the statute eliminated the notice of claim and tolling provisions. *See* Va.Code Ann. § 8.01–581.2(A), – 581.9 (Michie 1993).

4. The Virginia Supreme Court explained these provisions in *Smith,* as follows:

> The Virginia notice provisions not only require a plaintiff to provide written notice of the claim to the health care provider, they also absolutely prohibit the filing of a medical malpractice claim against the health care provider until 90 days after such notification and, if the health care provider chooses to have the issue reviewed by a malpractice review panel, the suit cannot be filed until the panel completes its review. *Smith,* 416 S.E.2d at 695.

---

of limitations. *See id.* at 694–95. As a result, the court reasoned that compliance with the notice provisions of the Virginia statute could result in a litigant being barred from bringing his EMTALA claim. *See id.* at 695. Because of this potential direct conflict, the court held that EMTALA preempted the Virginia notice of claim statute. *Id.*

3. The Virginia medical malpractice statute at issue in *Power* and *Smith* stated, in pertinent part:

> No action may be brought for malpractice against a health care provider unless the claimant notifies the health care provider in writing by registered or certified mail prior to commencing the action. The written notification shall include the time of the alleged malpractice and a reasonable description of the act or acts of malpractice. The claimant or health care provider may within sixty days of such notification file a written request for a review by a medical malpractice review panel established as provided in § 8.01–581.3.... No actions based on alleged malpractice shall be brought within ninety days of the notification by the claimant to the health care provider and if a panel is requested within

C.R.S § 24–10–109(1). Subsection six of the statute states

No action brought pursuant to this article shall be commenced until after the claimant who has filed timely notice pursuant to subsection (1) of this section has received notice from the public entity that the public entity has denied the claim or until after ninety days has passed following the filing of the notice of claim required by this section, whichever occurs first.

C.R.S § 24–10–109(6). The statute also provides that "if compliance with the provisions of subsection (6) of this section would otherwise result in the barring of an action, such time period shall be extended by the time period required for compliance with the provisions of subsection (6) of this section." C.R.S § 24–10–109(6).

Under the CGIA, then, a plaintiff's notice requirement is triggered by the "discovery" of his injury, whereas EMTALA's statute of limitations commences as of the date of the violation of the Act. Further, the CGIA tolls statutes of limitations pending compliance with the CGIA's procedural requirements where the time necessary for such compliance would otherwise exceed the limitations periods. Consequently, a plaintiff may discover his injuries and provide notice within EMTALA's statute of limitations but still fail to complete the CGIA's pre-suit compliance procedures and file his complaint within the federal limitations period. As a result, there is a potential direct conflict between compliance with the CGIA's procedural requirements and EMTALA's statute of limitations.

Accordingly, I conclude that EMTALA preempts the CGIA's notice of claim statute because the state procedural requirement stands as an obstacle to the accomplishments and execution of Congress' objectives in enacting EMTALA. I therefore deny Pioneers' motion to dismiss with respect to Plaintiffs' EMTALA claim. Moreover, because Plaintiffs' EMTALA claim remains in the case, I do not address Plaintiffs' waiver arguments.

## 2. Compliance with Notice Requirement under C.R.S. § 24–10–109

I next turn to the issue of proper notice under the CGIA, C.R.S. § 24–10–109. "Compliance with the 180–day notice requirement in § 24–10–109(1) ... is a jurisdictional prerequisite to suit.... However, a claimant need only substantially comply with the requirements concerning the contents of the notice given and the method of service." *Barham v. Scalia*, 928 P.2d 1381, 1384 (Colo.App.1996). "[T]he purposes of the notice requirement are to permit a public entity to conduct a prompt investigation of the claim, to remedy any dangerous condition, to make adequate fiscal arrangements to meet any liability, and to prepare a defense to the claim." *Id.* at 1385.

■ Pioneers argues that Plaintiffs failed to provide proper notice under the CGIA's notice of claim statute because they made no effort to comply with its specific provisions. Plaintiffs respond that because Pioneers received documents, investigation reports and communications from the Colorado Department of Health and other third parties within the 180 day notice period, it was on notice of Plaintiffs' claims. Plaintiffs further argue that these documents substantially complied with the specific provisions of C.R.S. § 24–10–109. Plaintiffs' argument is without merit.

In a recent *en banc* decision, the Colorado Supreme Court held that documents submitted to a public entity by third parties cannot constitute notice under the CGIA, where the documents were not authored by a plaintiff or her agent. *See Mesa County Valley School District v. Kelsey*, 8 P.3d 1200, 1205 (2000). At most, such documents give rise to an inference that the plaintiff could have made a claim for damages against the defendant, but not that the plaintiff was in fact making such a claim. *See id.* The court in *Kelsey* further held that although a claimant may substantially comply with the required factual information in the notice, there must be strict compliance with the requirement of a

request for damages. *See id.* ("[T]he request for payment of money damages is what shows that a document is a notice of a claim under section 24–10–109(1)."). Here, it is undisputed that neither Plaintiffs nor their agents submitted timely notice under C.R.S. § 24–10–109(1) or made any written request for damages. I therefore conclude that the Court lacks jurisdiction over Plaintiffs' state law claims against Pioneers because Plaintiffs failed to comply with the notice requirement under C.R.S. § 24–10–109(1).

### III. Conclusion

Accordingly, it is

ORDERED that Defendant Pioneers Hospital's Motion to Dismiss, filed June 16, 2000, is GRANTED IN PART AND DENIED IN PART. The motion to dismiss is denied with respect to Plaintiffs' EMTALA claim against Defendant Pioneers Hospital. The motion is granted in all other respects.