Victor MAZURKIEWICZ, and Mary Mazurkiewicz, H/W, Plaintiffs,

v.

DOYLESTOWN HOSPITAL, et al., Defendants.

No. 01–CV–5418.

United States District Court, E.D. Pennsylvania.

July 19, 2002.

Aaron Freiwald, Layser & Freiwald, PC, Philadelphia, PA, for Plaintiff.

Joan Orsini Ford, Marshall, Dennehey, Warner, Coleman & Goggin, Doylestown, PA, Kevin H. Wright, Wright, Young, McGilvery, Blue Bell, PA, Dean Murtogh, John E. Toczydlowski, German, Gallagher & Murtagh, Philadelphia, PA, for Defendants.

### EXPLANATION AND ORDER

ANITA B. BRODY, Judge.

On October 25, 2001, plaintiffs Victor Mazurkiewicz ("Mazurkiewicz" or "plaintiff") and his wife Mary Mazurkiewicz filed a complaint against defendant Doylestown Hospital ("the Hospital" or "Doylestown") and several individual doctors affiliated with the Hospital. Mazurkiewicz brought state negligence claims against Doylestown Hospital, Dr. Douglas Nadel, Daniel Nesi M.D. Associates, Dr. David Loughran, and Dr. Alane Beth Torf, as well as claims under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd(b) against Doylestown Hospital and Dr. Nadel. On December 3, 2001, defendants Doylestown Hospital and Dr. Torf filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). On January 10, 2002, defendant Dr. Loughran filed a similar motion to dismiss. On February 5, 2002, defendant Dr. Nadel and his employer, Daniel Nesi M.D. Associates, filed a motion to dismiss for failure to state a claim and also due to lack of subject matter jurisdiction.

### Facts

The facts in this case arise out of medical care received by Mazurkiewicz after being admitted to Doylestown Hospital at 8:10 p.m. on February 19, 2001. Mazurkiewicz arrived at the emergency room complaining of fever, sinus pressure, general achiness, swollen glands, pain on swallowing and difficulty breathing. Approximately half an hour after plaintiff arrived at the hospital, he was physically examined by Dr. Harold Feiler, who also elicited a factual history of plaintiff's complaints. Dr. Feiler ordered blood tests, which showed an elevated white blood count and a significant left shift. He also set up a consultation for plaintiff with ear, nose and throat specialist Dr. Nadel. Dr. Nadel performed an examination with a flexible laryngoscope, finding bulging in the right nasopharynx and hypopharynx, but no significant laryngeal obstruction. Dr. Nadel also attempted needle aspiration, but was unable to obtain any pus. He also ordered a CT scan, which was performed on the evening of February 19 and confirmed a probable abscess. Dr. Nadel ordered plaintiff to be admitted to Doylestown Hospital for airway observation and ordered that a trach tray be kept at his bedside.

During his admission, plaintiff complained of pain and tenderness on the right side of his neck, which continued even though he was continuously given pain medication. Plaintiff had subsequent blood work done and was proscribed intravenous antibiotics by Dr. Nadel. On February 20, 2001, plaintiff was examined by Dr. Loughran, a specialist in infectious disease medicine. Dr. Loughran recommended a repeat CT scan, but failed to order the scan or ensure that it occurred. He did not attempt to drain the abscess or otherwise treat plaintiff's neck infection. On February 22, 2001, plaintiff was examined by Dr. Torf, a specialist in infectious disease medicine, who agreed with the plan to treat plaintiff with intravenous antibiotics, rather than a CT scan. During the period between plaintiff's admittance to Doylestown Hospital and his discharge on February 24, 2001, he was not reexamined with either the flexible laryngoscope, needle aspiration or a CT scan. He continued to complain about neck pain and was repeatedly given pain medication. He was discharged from Doylestown Hospital at 12:45 p.m. on February 24, 2001.

At approximately 8:17 p.m. on February 24, Mazurkiewicz was taken to the emergency room of Hunterdon Medical Center, with a fever of nearly 102F, dysphaglia and restriction of neck motion. A CT scan was performed, which revealed right parapharyngeal space abscess with probable retropharyngeal space involvement. Plaintiff was taken immediately to the OR for emergency securing of his airway and surgical drainage of his abscess. During surgery, it was determined that a tracheotomy was necessary to protect his airway. He was discharged from Hunterdon Medical Center on March 3, 2001.

Plaintiff brings several federal and state claims in his complaint: (1) an Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd(b), claim against Doylestown hospital, for failure to stabilize his emergency medical condition prior to his discharge from the hospital, (2) a similar EMTALA claim against Dr. Nadel, (3) a state law negligence claim against Doylestown Hospital, (4) a state law corporate negligence claim against Doylestown Hospital, (5) a state law negligence claim against Dr. Nadel and his employer Daniel Nesi, M.D. Associates, P.C., (6) a state law negligence claim against Dr. Loughran, and (7) a state law negligence claim against Dr. Torf. In the general injury and damages allegations against all the defendants, plaintiff also alleges that his wife, plaintiff Mary Mazurkiewicz, suffered loss of her husband's society, comfort and companionship.

Three separate motions to dismiss have been filed by the various defendants in this case. They essentially raise the same challenges to the legal sufficiency of the complaint, so I shall discuss them together. Essentially, defendants claim that: (1) the EMTALA claim against Dr. Nadel must be dismissed as EMTALA does not provide for a cause of action against individual physicians, (2) the EMTALA claim against Doylestown Hospital must be dismissed, as plaintiff has failed to properly allege that he had an emergency medical condition or that this condition was diagnosed by the Hospital, and (3) that it is inappropriate to exercise supplemental jurisdiction over plaintiff's state law claims.

**Motion to Dismiss**

Rule 12(b)(6) permits the court to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). The claim may be dismissed only if the plaintiff cannot demonstrate any set of facts in support of the claim that would entitle it to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Williams v.*

*New Castle County,* 970 F.2d 1260, 1266 (3d Cir.1992). In considering the motion to dismiss, the court must accept as true all factual allegations in the complaint and all reasonable inferences that may be drawn therefrom, construing the complaint in the light most favorable to the plaintiff. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Weiner v. Quaker Oats Co.,* 129 F.3d 310, 315 (3d Cir.1997).

## EMTALA

Congress enacted EMTALA in 1986 to "address a growing concern with preventing 'patient dumping,' the practice of refusing to provide emergency medical treatment to patients unable to pay, or transferring them before emergency conditions were stabilized." *Power v. Arlington Hosp. Ass'n,* 42 F.3d 851, 856 (4th Cir. 1994). *See also* H.R.Rep. No. 241(I), 99th Cong., 1st Sess. 27 (1986), *reprinted in* 1986 U.S.C.C.A.N. 42, 605. Under EMTALA, a hospital receiving Medicare payments is subject to two requirement. First, if an individual presents himself at the emergency room and requests treatment, the hospital "must provide for an appropriate medical screening examination ... to determine whether or not an emergency medical condition ... exists." 42 U.S.C. § 1395dd(a). Second, the statute provides that:

> **(b) Necessary stabilizing treatment for emergency medical conditions and labor**
>
> **(1) In general**
>
> If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either-
>
> **(A)** within the staff and facilities available at the hospital, for such further medical examination and such

> treatment as may be required to stabilize the medical condition, or
>
> **(B)** for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

42 U.S.C. § 1395dd(b). The definition of "transfer" in this provision includes the discharge of an individual from the hospital. *See* 42 U.S.C. § 1395dd(e)(4).

Where a hospital fails to comply with these statutory directives, EMTALA provides for various enforcement mechanisms. *See* 42 U.S.C. § 1395dd(d). An individual who has suffered personal harm as a direct result of a hospital's violation of EMTALA may bring a civil action against the hospital. *See* 42 U.S.C. § 1395dd(d)(2)(A). This is the only provision that provides private individuals with a cause of action for a violation of the statute.

## EMTALA Claim Against Doylestown Hospital

Plaintiff alleges that Doylestown Hospital had an obligation to stabilize his emergency condition and that its failure to do so violated EMTALA. Mazurkiewicz claims that he presented himself at the emergency room of Doylestown Hospital with an emergency medical condition, namely parapharyngeal space abscess. He alleges that Doylestown Hospital and its agents recognized that he was suffering from this condition and undertook certain treatment of the abscess during the time that he was admitted to Doylestown Hospital. Mazurkiewicz argues that this treatment was insufficient to stabilize his emergency medical condition, which persisted after he was discharged from Doylestown Hospital. Plaintiff claims that this same condition resulted in emergency surgery that was performed at Hunterdon Medical Center hours after his discharge from Doylestown Hospital.

Defendants argue that the allegations in the complaint are insufficient to support plaintiff's EMTALA claim against Doylestown Hospital. They maintain that Mazurkiewicz was not suffering from an emergency medical condition when he presented himself at the emergency room of Doylestown Hospital. Defendants also assert that, as Mazurkiewicz was not actually diagnosed with parapharyngeal space abscess while at Doylestown Hospital, he has failed to establish that the Hospital had actual knowledge of plaintiff's emergency medical condition, a necessary element of an EMTALA stabilization claim.[1]

■ The Third Circuit has not yet addressed the issue of what showing a plaintiff must make to successfully state a claim for violation of 42 U.S.C. § 1395dd(b). The Fourth Circuit has set out such a standard, which requires that, to recover for a violation of EMTALA's stabilization and transfer provision, plaintiff must establish that: (1) the patient had an emergency medical condition, (2) the hospital actually knew of that condition, (3) the patient was not stabilized before being transferred. *See Baber v. Hospital Corp. of America,* 977 F.2d 872, 883 (4th Cir. 1992).[2] Several other Circuit Courts of Appeals have adopted similar standards for claims alleging violation of the transfer provisions, including the controversial requirement that plaintiff demonstrate that the hospital actually knew of his emergency medical condition. *See Harry,* 291 F.3d at 774 (holding that an element of a § 1395dd(b) claim is that the hospital knew of the emergency medical condition); *Jackson v. East Bay Hosp.,* 246 F.3d 1248, 1257 (9th Cir.2001)(holding that a showing of actual knowledge is a condition precedent to the stabilization requirement); *Urban by Urban v. King,* 43 F.3d 523, 525–26 (10th Cir.1994)(explicitly joining Fourth, Sixth and D.C. Circuits in holding that actual knowledge is required); *Gatewood v. Washington Healthcare Corp.,* 933 F.2d

---

1. Several Circuit Courts of Appeals have held that a patient who was admitted to a hospital after presenting herself at the emergency room cannot bring a claim under § 1395dd(b). *See Bryant v. Adventist Health System/West,* 289 F.3d 1162, 1167 (9th Cir. 2002); *Harry v. Marchant,* 291 F.3d 767, 771 (11th Cir.2002); *Bryan v. Rectors & Visitors of the University of Virginia,* 95 F.3d 349, 352 (4th Cir.1996). *See also Lopez–Soto v. Hawayek,* 175 F.3d 170, 177 n. 4 (1st Cir.1999)(holding that while EMTALA might extend beyond the emergency room, some temporal limitation is necessary, and citing to *Bryan* as an example of an acceptable limitation). *But see, Thornton v. Southwest Detroit Hospital,* 895 F.2d 1131, 1135 (6th Cir.1990)(holding that "emergency care does not stop when a patient is wheeled from the emergency room into the main hospital ... [e]mergency care must be given until the patient's emergency medical condition is stabilized."). However, as this issue was not raised by any of the defendants and as plaintiff has not had an opportunity to address it, I decline to raise it sua sponte at this stage of the case.

2. As set out by the Fourth Circuit, this standard includes a fourth prong, "prior to transfer of an unstable patient, the transferring hospital did not obtain the proper consent or follow the appropriate certification and transfer procedures." *Baber,* 977 F.2d at 883. The *Baber* court announced this standard in the context of a transfer of a patient from one hospital to another. The fourth prong of this standard is not appropriate, however, where the "transfer" at issue is solely a discharge of the of the patient from the initial hospital. *See* 42 U.S.C. § 1395(e)(4) (including discharge in the definition of transfer for the purposes of EMTALA). Each section of 42 U.S.C. § 1395dd(c), the provision that establishes guidelines for appropriate transfers under EMTALA, refers explicitly to transfers "to another medical facility," or to "the receiving facility." 42 U.S.C. §§ 1395dd(c)(1)(A), (c)(2)(B). However, in the case of a discharge, there is by definition no such receiving medical facility. Such a showing cannot, therefore, be required of a plaintiff alleging a violation of EMTALA's stabilization requirement prior to his discharge from a hospital.

1037, 1041 (D.C.Cir.1991)(holding that 42 U.S.C. § 1395dd(b) is not triggered unless the hospital determines that plaintiff suffers from an emergency medical condition); *Cleland v. Bronson Health Care Group, Inc.,* 917 F.2d 266, 268–69 (6th Cir.1990)(same). As the Fourth Circuit's formulation of the appropriate showing required of a plaintiff claiming a violation of EMTALA's transfer provisions is a reasonable interpretation of the statute, I find that it is the appropriate standard by which to judge the sufficiency of Mazurkiewicz's complaint.

■ Defendants assert that plaintiff cannot establish either the first or second elements of a claim for violation of the stabilization and transfer provisions of EMTALA. Their first argument for dismissal of this claim is that plaintiff failed to properly allege that he had an emergency medical condition at the time he presented himself at the emergency room of Doylestown Hospital. Mazurkiewicz asserts that he was suffering from parapharyngeal space abscess when he arrived at Doylestown Hospital and that this ailment is an emergency medical condition. Viewing these allegations in the light most favorable to the plaintiff, it is clear that plaintiff has sufficiently pled this element of his claim of an EMTALA violation against Doylestown Hospital.

Defendants also argue that plaintiff's emergency medical condition was not diagnosed by the staff of Doylestown Hospital and, therefore, that the Hospital never actually knew of this condition. They emphasize that a hospital can only be held liable under EMTALA's stabilization and transfer provisions for failure to stabilize conditions that it has actually diagnosed. *See, Harry,* 291 F.3d at 774; *Jackson,* 246 F.3d at 1257; *Baber,* 977 F.2d at 883. In his complaint, plaintiff alleges that his emergency medical condition was "recognized by defendant Doylestown Hospital,

its physicians (including Dr. Feiler and Dr. Nadel), and the hospital's medical staff." Complaint, at ¶ 44. This allegation can be reasonably interpreted to assert that Doylestown Hospital actually knew that plaintiff was suffering from an emergency medical condition.

Defendants rely upon certain other allegations in the complaint in arguing that plaintiff cannot establish that Doylestown Hospital actually knew of Mazurkiewicz's emergency medical condition. These allegations include: (1) Dr. Feiler recorded plaintiff's condition as "obvious right peritonsilar abscess," (2) Dr. Nadel examined plaintiff with a flexible laryngoscope and found that "laryngeal obstruction was not significant" soon after plaintiff presented himself at Doylestown Hospital, and (3) Dr. Nadel was unable to obtain any pus when attempting a needle aspiration test. *See* Complaint, at ¶¶ 15, 18–19. Viewing these allegations in the light most favorable to the plaintiff, I find that it may be possible for plaintiff to establish that Doylestown Hospital actually diagnosed him with the emergency medical condition of parapharyngeal space abscess. Therefore, defendants' motions to dismiss this claim shall be denied.

**EMTALA Claim Against Dr. Nadel**

■ Plaintiff claims that Dr. Nadel, the ear, nose and throat specialist who examined and treated him at Doylestown Hospital, violated EMTALA when he failed to stabilize plaintiff's emergency medical condition. In their motion to dismiss, defendants Dr. Nadel and Daniel Nesi M.D. Associates assert that this claim must be dismissed, as EMTALA does not provide for a cause of action against individual physicians. In his response to the motion to dismiss, plaintiff admits that the statute does not explicitly set out such a cause of action and that courts in other circuits that

have considered such claims have held that EMTALA does not provide a private cause of action against a physician. *See Eberhardt v. City of Los Angeles,* 62 F.3d 1253, 1256–57 (9th Cir.1995); *King v. Ahrens,* 16 F.3d 265, 271 (8th Cir.1994); *Delaney v. Cade,* 986 F.2d 387, 393–94 (10th Cir.1993); *Baber,* 977 F.2d at 878; *Gatewood,* 933 F.2d at 1040 n. 1.

In light of plaintiff's inability to demonstrate that EMTALA provides for a civil action against an individual physician, defendants' motion to dismiss shall be granted with respect to his EMTALA claim against Dr. Nadel.

### Supplemental State Law Claims

Each of the defendants argue in their motions to dismiss that plaintiff's five state law claims should be dismissed pursuant to 28 U.S.C. §§ 1367(c)(3). In addition, the motion to dismiss filed by Dr. Loughran asserts that these state law claims should be dismissed in accordance with 28 U.S.C. §§ 1367(c)(2) and (c)(3). The limitations on the exercise of supplemental jurisdiction in § 1367(c) were intended to be a codification of the preexisting pendent jurisdiction law enunciated by the Supreme Court in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and its progeny. *See Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir.1995). Section 1367(c)(2) provides that a district court may refuse to exercise supplemental jurisdiction where the state law claims predominate over the federal law claims. Section 1367(c)(3) authorizes a district court to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.

As I have denied defendants' motions to dismiss plaintiff's EMTALA claim against Doylestown Hospital, this case still involve a federal law claim. Therefore, § 1367(c)(3) does not provide a basis for

me to decline to exercise supplemental jurisdiction over plaintiff's state law claims.

With regard to § 1367(c)(2), the Third Circuit has emphasized that it is a limited exception the doctrine of pendent jurisdiction. *See Borough of West Mifflin,* 45 F.3d at 789. A district court should invoke this provision "only where there is an important countervailing interest to be served by relegating state claims to the state court ... [in essence] where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog." *Id.* The Third Circuit has instructed that district courts considering whether to refrain from exercising supplemental jurisdiction in accordance with § 1367(c)(2) should consider whether the state law claims substantially predominate over federal law claims (1) in terms of proof, (2) in terms of the comprehensiveness of the remedy sought, and (3) in terms of the scope of the issues raised. *See id.* In examining defendants' motion to dismiss, they rely heavily upon the different legal theories that support plaintiff's federal and state law claims, as well as a simply numerical comparison of the single remaining federal law claim and the five state law claims. However, while the legal theories differ between the federal and state law claims, much of the evidence likely to be introduced will be relevant to both sets of claims. Additionally, the remedy sought for the federal claims is the same as that sought for the state law claims; damages for the same set of injuries to plaintiff. Finally, defendants do not suggest that their state law claims are "more important, more complex, more time consuming, or in any other way more significant than their federal counterparts." *Id.* at 790. Therefore, I find that there is no counterveiling interest sufficient to justify my declining to exercise

supplemental jurisdiction over plaintiff's state law claims.

## ORDER

**AND NOW**, this 18th day of July, 2002, upon consideration of the filings of the parties, it is **ORDERED** that:

(1) Defendants Doylestown Hospital and Alane Beth Torf's Motion to Dismiss (Docket Entry # 4) is **DENIED**;

(2) Defendant David Loughran's Motion to Dismiss (Docket Entry # 9) is **DENIED**;

(3) Defendants Douglas Nadel and Daniel Nesi M.D. Associates' Motion to Dismiss (Docket Entry # 15) is **GRANTED** in part and **DENIED** in part. Count II of the Complaint is **DISMISSED**;

(4) Defendant Douglas Nadel's Motion for a Protective Order (Docket Entry # 20) is **DENIED** as moot.