Winifred HARDY, Plaintiff–Appellant,

v.

NEW YORK CITY HEALTH & HOSPITALS CORP. and Queens Hospital Center, Defendants–Appellees.

Docket No. 98–7030

United States Court of Appeals, Second Circuit.

Argued Aug. 28, 1998.

Decided Jan. 15, 1999.

---

Walter Thomas Reardon (with James M. Mimnaugh on brief), Reardon & Sclafani, Yonkers, New York, for Plaintiff–Appellant.

Pamela Seider Dolgow, Jane S. Earle, of Counsel (Michael D. Hess, Corporation Counsel), Office of the Corporation Counsel of the City of New York, New York, New York, for Defendants–Appellees.

Before: WINTER, Chief Judge, WALKER and McLAUGHLIN, Circuit Judges.

## BACKGROUND

McLAUGHLIN, Circuit Judge:

Winifred Hardy had been treated for hypertension for many years. On January 27, 1991, she complained of nausea, vomiting, dizziness, diarrhea and elevated blood pressure, and reported that those symptoms had lasted several days. Hardy was treated in the emergency room of Mary Immaculate Hospital in New York and released. Later that day, because her symptoms persisted, an Emergency Medical Service ("EMS") ambulance brought Hardy to the emergency room of Queens Hospital Center (the "Hospital") in New York. The Hospital is operated by the New York City Health and Hospitals Corporation ("HHC").

When Hardy arrived at the Hospital, her blood pressure was 195/143. She was examined and given medication. Seven hours after her arrival, Hardy's condition was described as "improved." She was then discharged, with instructions to have her blood pressure checked daily for one week and to follow-up with her private doctor.

Approximately twenty-four hours later, EMS was called to Hardy's home a second time. Finding Hardy in bed, vomiting, dizzy and hysterical, EMS personnel took her back to the Hospital where she displayed abnormal vital signs, including extremely elevated blood pressure. She was soon diagnosed as having suffered a cerebral hemorrhage or a stroke, and was admitted. She remained under continuous care in the Hospital for eleven months. Partially paralyzed and permanently disabled, Hardy was finally discharged on December 9, 1991.

On November 24, 1993, not quite two years after her release from the Hospital, Hardy filed a complaint, in the United States District Court for the Eastern District of New York (Amon, J.), against the HHC and the Hospital (collectively hereinafter, "the Hospital"). Hardy claimed that the Hospital violated the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. Specifically, Hardy asserted that the Hospital was liable: (1) for failing to give her an appropriate medical screening exam when she first arrived at the Hospital on January 27, 1991; and (2) for discharging her seven hours later without having stabilized her medical condition.

Hardy did not file a notice of claim before bringing suit against the Hospital, within ninety days of the occurrence, as required by New York law. *See* N.Y. Gen. Mun. Law § 50–e (McKinney's 1986). Nor did she ever apply for leave to file a late notice of claim. *See id.* § 50–e(5).

In its answer, the Hospital asserted, *inter alia,* that Hardy's complaint failed to state a claim upon which relief could be granted. Thereafter, the Hospital moved for judgment on the pleadings under Federal Rule of Civil

Procedure 12(c), or alternatively, for summary judgment under Federal Rule of Civil Procedure 56. The Hospital asserted that Hardy's claim was barred because Hardy: (1) failed to file a notice of claim with the Hospital; and (2) failed to commence a timely action within two years of the occurrence, as EMTALA's statute of limitations required.

In September 1996, the district court denied the Hospital's motion. Judge Amon concluded that the Hospital had waived both its notice of claim and statute of limitations arguments by failing to plead these affirmative defenses in its answer. The Hospital then moved, under Federal Rule of Civil Procedure 15(a), to amend its answer to include the "waived" defenses. Also, if the motion to amend was granted, the Hospital renewed its motion for judgment on the pleadings or summary judgment under Rule 12(c) and Rule 56.

In an Opinion, Judge Amon expressly declined to rule on whether the Hospital could amend its answer. Instead, the court *sua sponte* "revisit[ed] the waiver issue" with regard to the notice-of-claim defense. This time, Judge Amon determined that the Hospital's answer containing the objection that the complaint did not state a cause of action was sufficient to preserve that defense.

Judge Amon went on to rule that under EMTALA and applicable New York law, Hardy was indeed required to file a notice of claim as a condition precedent to commencing her EMTALA personal injury action against the Hospital. Because Hardy did not file a notice of claim, she failed to state a claim upon which relief could be granted. Accordingly, Judge Amon granted the Hospital's motion for judgment on the pleadings. Hardy appeals.

## DISCUSSION

This is our first opportunity to examine EMTALA. We begin by addressing whether a plaintiff filing an EMTALA claim in federal court must meet New York's notice-of-claim requirement.

## I. Standard of Review

■ Generally, we review a district court's Rule 12(c) dismissal of a complaint *de novo*. See *Sheppard v. Beerman*, 94 F.3d 823, 827 (2d Cir.1996). Moreover, because this case turns on an issue of statutory interpretation, we review the district court's disposition *de novo*. See *Perry v. Dowling*, 95 F.3d 231, 235 (2d Cir.1996).

## II. EMTALA

■ In 1986, Congress enacted the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. The purpose of EMTALA is to prevent " 'patient dumping,' the practice of refusing to provide emergency medical treatment to patients unable to pay, or transferring them before emergency conditions [are] stabilized." *Power v. Arlington Hosp. Ass'n*, 42 F.3d 851, 856 (4th Cir.1994); see *Bryan v. Rectors and Visitors of the Univ. of Virginia*, 95 F.3d 349, 351 (4th Cir.1996); *Correa v. Hospital San Francisco*, 69 F.3d 1184, 1189 (1st Cir. 1995); see also H.R.Rep. No. 241(I), 99th Cong., 2nd Sess. 27 (1986), reprinted in 1986 U.S.C.C.A.N. 42, 605, 726–27.

EMTALA, which applies to all hospitals that participate in the federal Medicare program, imposes two primary obligations on those hospitals. First, when an individual shows up for treatment at a hospital's emergency room, "the hospital must provide for an appropriate medical screening examination . . . to determine whether or not an emergency medical condition" exists. 42 U.S.C. § 1395dd(a). Second, if the screening examination indicates that an emergency medical condition does exist, the hospital ordinarily must "stabilize the medical condition" before transferring or discharging the patient. *Id.* § 1395dd(b)(1)(A).

■ EMTALA is not a substitute for state law on medical malpractice. See *Power*, 42 F.3d at 856. It "was not intended to guarantee proper diagnosis or to provide a federal remedy for misdiagnosis or medical negligence." *Id.* Instead, EMTALA was enacted to fill a lacuna in traditional state tort law by imposing on hospitals a legal duty (that the common law did not recognize) to provide

emergency care to all. *See Brooks v. Maryland Gen. Hosp., Inc.,* 996 F.2d 708, 714–15 (4th Cir.1993); *Bryan,* 95 F.3d at 351 ("[EMTALA's] core purpose is to get patients into the system who might otherwise go untreated and be left without a remedy because traditional medical malpractice law affords no claim for failure to treat."); *Gatewood v. Washington Heathcare Corp.,* 933 F.2d 1037, 1041 (D.C.Cir.1991) (finding EMTALA creates "a new cause of action, generally unavailable under state tort law, for what amounts to failure to treat").

The legislative history of EMTALA demonstrates that "Congress never intended to displace state malpractice law." *Brooks,* 996 F.2d at 714. This intent to supplement, but not supplant, state tort law is evident in EMTALA's limited preemption provision. *See* 42 U.S.C. § 1395dd(f); *see also Brooks,* 996 F.2d at 715. EMTALA provides: "The provisions of this section do not preempt any State or local law requirement, except to the extent that the requirement directly conflicts with a requirement of this section." 42 ·U.S.C. § 1395dd(f).

EMTALA's deference to state law is also apparent in its express adoption of state law as to the damages recoverable. *Id.* § 1395dd(d)(2)(A); *Brooks,* 996 F.2d at 715. EMTALA provides that a plaintiff, in a civil action against a hospital, may "obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate." 42 U.S.C. § 1395dd(d)(2)(A).

The nettlesome question remains: did Congress intend to incorporate New York's notice-of-claim requirement, as a limit on the "damages available," under § 1395dd(d)(2)(A)?

## III. New York's Notice–of–Claim Requirement

▪ We start with the general rule that in a federal court, state notice-of-claim statutes apply to *state*-law claims. *See Felder v. Casey,* 487 U.S. 131, 151, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) ("federal courts entertaining state-law claims against … municipalities are obligated to apply the [state] notice-of-claim provision"); *Fincher v. Coun-*

*ty of Westchester,* 979 F.Supp. 989, 1002 (S.D.N.Y.1997) (noting that New York's 90–day notice-of-claim requirement applies to state tort claims brought as pendent claims in a federal action).

▪ On the other hand, when a *federal* action is brought in federal court, the court has discretion to borrow from state law when there are deficiencies in the federal statutory scheme. *See Brown v. United States,* 742 F.2d 1498, 1503–04 (D.C.Cir.1984); *AT & T Co. v. New York City Dep't of Human Resources,* 736 F.Supp. 496, 499 (S.D.N.Y.1990). While the absence of a notice-of-claim provision generally does not render a federal statute deficient, *see Felder,* 487 U.S. at 140, 108 S.Ct. 2302; *AT & T,* 736 F.Supp. 496, 499, we will apply such a provision to a federal action where there is evidence that Congress intended us to do so.

▪ Under New York law, a notice of claim is a condition precedent to bringing personal injury actions against municipal corporations such as the HHC and Queens Hospital Center (which is part of the HHC). *See* N.Y. Gen. Mun. Law § 50–e; *Fincher,* 979 F.Supp. at 1002; *O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 358, 445 N.Y.S.2d 687, 689, 429 N.E.2d 1158, 1160 (1981). The notice of claim must set forth, *inter alia,* the nature of the claim, and must be filed within ninety days of when the claim arises. *See* N.Y. Gen. Mun. Law § 50–e.

New York's law requires a plaintiff to plead in the complaint that: (1) the plaintiff has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed (and before the complaint was filed); and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim. *See* N.Y. Gen. Mun. Law § 50–i (McKinney's 1986); N.Y. Unconsol. Law § 7401 (McKinney's 1979 & Supp.1998); *Davidson v. Bronx Mun. Hosp.,* 64 N.Y.2d 59, 61–62, 484 N.Y.S.2d 533, 534–35, 473 N.E.2d 761, 762–63 (1984) (per curiam).

▪ Notice of claim requirements "are construed strictly by New York state courts." *AT & T,* 736 F.Supp. at 499 (citing *Murray v. LeRoy Cent. Sch. Dist.,* 67 N.Y.2d 775, 775,

500 N.Y.S.2d 643, 643, 491 N.E.2d 1100, 1100 (1986); *Chinatown Apartments, Inc. v. New York City Transit Auth.*, 100 A.D.2d 824, 825, 474 N.Y.S.2d 763, 765 (1st Dep't 1984)). Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action. *See Brown v. Metropolitan Transport. Auth.*, 717 F.Supp. 257, 259 (S.D.N.Y.1989); *Davidson*, 64 N.Y.2d at 62, 484 N.Y.S.2d at 535, 473 N.E.2d at 763. In sum, under New York law, if § 50–e has not been satisfied (and the defendant has not waived its right to a notice of claim), no damages are available.

 "The purpose of the notice-of-claim requirement is to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation." *Fincher*, 979 F.Supp. at 1002; *see Davidson*, 64 N.Y.2d at 62, 484 N.Y.S.2d at 535, 473 N.E.2d at 763. This commendable aim is in no way inconsistent with EMTALA's complementary objective of preventing hospitals from turning away emergency room patients merely because they cannot pay.

Significantly, EMTALA's legislative history demonstrates that Congress questioned "the potential impact" of EMTALA on "the current medical malpractice crisis"; Congress also expressed concern that an unbridled EMTALA could unduly burden hospitals and thereby "result in a decrease in available emergency care" rather than the intended increase in such care. H.R.Rep. No. 241(I), 99th Cong., 2nd Sess. 27 (1986), reprinted in 1986 U.S.C.C.A.N. 42, 728. New York's notice-of-claim law, by promoting timely settlement of claims and protecting municipal hospitals from unnecessary or excessive litigation expenses, helps to alleviate these concerns.

A respectable argument can be made that Congress intended us to read § 1395dd(d)(2)(A) narrowly, as referring only to the specific type and amount of damages available under New York law. *See generally Power*, 42 F.3d at 866 ("We do not read § 1395dd(d)(2)(A) as expressly or impliedly incorporating state-mandated procedural requirements for EMTALA claims").

However, we are persuaded that a broader reading of § 1395dd(d)(2)(A) is required. We conclude that New York's notice-of-claim requirement is part of the applicable "law of the State" that we are to apply under § 1395dd(d)(2)(A). We must recognize that New York's notice-of-claim requirement is a "condition precedent" to suing for damages in a personal injury action against a municipality. *See generally Brooks*, 996 F.2d at 715 ("EMTALA expressly adopts state-imposed limitations on damages"); *cf. Felder*, 487 U.S. at 152, 108 S.Ct. 2302 (recognizing that a state notice-of-claim statute is "more than a mere rule of procedure"). Our conclusion is also based on EMTALA's express deference to state law and EMTALA's role as a "gap-filler" for state malpractice law.

Hardy mounts a second argument against incorporating New York's notice-of-claim requirement: she contends that § 1395dd(f) preempts New York law. We disagree.

## IV. Preemption

 In determining whether federal law preempts a state statute, "our sole task is to ascertain the intent of Congress." *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987); *see Burgio and Campofelice, Inc. v. New York State Dep't of Labor*, 107 F.3d 1000, 1008 (2d Cir.1997). When Congress expressly defines a statute's preemptive reach, and the definition provides "a reliable indicium" of congressional intent as to what should be left to state authority, there is a "reasonable inference" that Congress did not intend to preempt matters beyond that reach. *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995) (discussing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)); *see also Toy Mfrs. of Am., Inc. v. Blumenthal*, 986 F.2d 615, 623 (2d Cir.1992). This is based on the familiar principle of *expressio unius est exclusio alterius*, the mention of one thing implies the exclusion of the other. *See Cipollone*, 505 U.S. at 517, 112 S.Ct. 2608.

 EMTALA specifically envisions that some procedural matters are better left to

state discretion: "The provisions of this section do not preempt any State or local law requirement, except to the extent that the requirement *directly conflicts* with a requirement of this section." 42 U.S.C. § 1395dd(f) (emphasis added). As the Fourth Circuit has recognized, "EMTALA is quite clear that it is not intended to preempt state tort law except where absolutely necessary." *Bryan*, 95 F.3d at 352. We need only determine whether New York's notice-of-claim requirement "directly conflicts" with EMTALA.

■■■ A state statute "directly conflicts" with federal law when: (1) compliance with both federal and state regulations is a "physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963); *Environmental Encapsulating Corp. v. City of New York*, 855 F.2d 48, 53 (2d Cir.1988); or (2) the state law "stands as an obstacle" to the "execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941); *County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 57 (2d Cir.1984).

First, Hardy asserts that it was "physically impossible" for her to serve a notice of claim within ninety days of when she was treated, as § 50–e requires, because she was hospitalized continuously for eleven months after her treatment in the Hospital emergency room. The point is well taken, but it does not account for her failure to seek leave to serve a late notice based on her disability. *See* N.Y. Gen. Mun. Law § 50–e(5). Hardy could have applied for leave to serve a late notice of claim even after she commenced her action against the Hospital, provided the extension did not take her beyond the applicable two-year statute of limitations. *See id.; see also* State of New York Judicial Conference, Twenty-first Annual Report, 287–88, 398 (1976) (explaining amendments to § 50–e, "loosening" provisions governing leave to file a late notice of claim). Because Hardy did not avail herself of the opportunity to apply for an extension, we cannot conclude that compliance with New York's notice-of-claim law and EMTALA was a "physical impossibility." *See Florida Lime & Avocado Growers*, 373 U.S. at 142–43, 83 S.Ct. 1210; *Drap-*

*er v. Chiapuzio*, 9 F.3d 1391, 1393 (9th Cir. 1993) (per curiam) (holding EMTALA did not preempt Oregon's notice-of-claim requirement).

Second, Hardy argues that New York's notice of claim requirement is "an obstacle to" fulfilling congressional intent and objectives regarding EMTALA. *Hines*, 312 U.S. at 67, 61 S.Ct. 399. Hardy sees an analogy between EMTALA and Civil Rights actions under 42 U.S.C. § 1983. Because the Supreme Court has determined that state notice-of-claim requirements are inconsistent with Congress's purpose in enacting 42 U.S.C. § 1983, *Felder*, 487 U.S. at 141, 108 S.Ct. 2302, Hardy asks us to conclude that such requirements are also inharmonious with EMTALA. The analogy is inapt.

As the Supreme Court stated, the core purpose of § 1983 is "to provide compensatory relief to those deprived of their federal rights by state actors." *Id.* The core purpose of EMTALA, on the other hand, is to prevent hospitals from failing to examine and stabilize uninsured patients who seek emergency treatment. *See, e.g., Bryan*, 95 F.3d at 351.

New York's notice-of-claim law does not thwart EMTALA's purpose. Instead, § 50–e "simply addresses a concern that [EMTALA] does not, namely the historical concern of governmental bodies that they be given reasonably prompt notice of tort claims against them." *Draper*, 9 F.3d at 1393.

Moreover, unlike § 1983, EMTALA contains an express provision defining its limited preemptive reach: unless a state requirement directly conflicts with an EMTALA requirement, the state requirement is not preempted. *See* 42 U.S.C. § 1395dd(f). This demonstrates that one of Congress's objectives was that EMTALA would peacefully coexist with applicable state "requirements." Because New York's notice-of-claim requirement does not "directly conflict" with any requirement of EMTALA, § 50–e is not preempted. *See* N.Y. Gen. Mun. Law § 50–e; 42 U.S.C. § 1395dd(f).

## CONCLUSION

Based on the foregoing, we hold that a plaintiff filing an EMTALA claim in federal

court must meet New York's notice-of-claim requirement. Accordingly, we AFFIRM the decision of the district court dismissing Hardy's claim.

AFFIRMED.