Joan RODRIGUEZ, et al., Plaintiffs,

v.

AMERICAN INTERNATIONAL INSURANCE COMPANY OF PUERTO RICO, et al., Defendants

No. CIV. 02–1810(JP).

United States District Court, D. Puerto Rico.

May 12, 2003.

Ramón L. Walker–Merino, Esq., San Juan, PR, for Plaintiff.

Luis R. Ortiz Segura, Esq., Karla S. Mellado Delgado, Esq., Pinto–Lugo, Oliveras & Ortiz, PS, Ivette Berríos, Esq., San Juan, PR, for Defendants.

## OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

Before the Court is the issue of whether the Emergency Medical Treatment and Active Labor Act ("EMTALA") applies to Puerto Rico's "Centros de Diagnóstico y Tratamiento" (hereinafter "CDTs"), an issue of first impression before this Court. Plaintiffs in this case are Joan Rodríguez, Domingo Díaz Rojas, and their conjugal partnership. On March 3, 2001, Plaintiffs' four month old daughter, Lilliam Díaz Rodríguez, was rushed to the Corozal CDT after she vomited in church. She arrived at the same in respiratory distress on or about 9:00 p.m. Plaintiffs aver that the initial evaluation performed on the child was inadequate and failed to comply with EMTALA requirements for an appropriate medical screening. They further assert that it was this faulty screening that failed to detect the emergency condition of the child in order to properly stabilize and transfer her, as a result of which she died. They brought this cause of action alleging violations of EMTALA and Puerto Rico law.

Defendants are Corporación de Servicios Integrados de Salud de Area de Barranquitas, Corozal, Naranjito y Orocovis, who owns the Corozal CDT; its insurer, American International Insurance Company of Puerto Rico; and Aeromed Services. On January 17, 2003, the Corozal CDT filed a motion requesting summary judgment on the grounds that it is not an emergency room or a hospital within the meaning of EMTALA and that consequently, no cause of action under said statute can ensue against it. After thoroughly and carefully analyzing the issue, the Court concludes that the provisions of EMTALA apply to CDTs in Puerto Rico that offer twenty-four hour emergency room services, and that consequently, Plaintiffs have a colorable claim under said statute.

## II. THE LAW

The Emergency Medical Treatment and Active Labor Act, better known by its acronym, "EMTALA," imposes statutory duties of physicians that treat patients in emergency rooms. EMTALA was enacted by Congress in 1996, in the face of "the increasing number of reports that hospital emergency rooms are refusing to accept or treat patients with emergency conditions if the patient does not have medical insurance." H.R.Rep. No. 241(I), 99th Cong., 1st Sess. 27 (1986). "The intent of this bill is honorable, that is to address concerns about inadequate health care for our citizens who do not have health insurance or who are 'underinsured'". 1986 U.S.C.C.A.N. 3, 460 (1986) (additional views of Senator Orrin Hatch).

"Many are quick to say the problem lies with the health care providers—hospitals and physicians who are anxious to reap ever-increasing profits and who seem unconcerned with public health and well-being. There have been disturbing reports about hospitals referring, and in some instances refusing to treat patients who present themselves for care, but who don't have health insurance. Others apparently require a substantial cash deposit from uninsured patients before admitting the individual for care. This has been referred to as taking a 'wallet biopsy' before determin-

ing if the individual merits treatment. When this occurs to individuals in need of medical care it is unconscionable and completely contrary to the proud tradition of our health care professionals." *Id.* at 461.

In addition, the main focus of this bill was not only to ensure that every person who needed medical care received it, but that the medical care was offered in a speedy and efficient manner. "Regional trauma centers are specifically designed to direct patients to a number of different medical facilities so that patients may receive the best possible medical care as quickly as possible." *Id.* at 465 (submission by the Law Firm of Kenny Nachwalter & Seymour to the Honorable Peter W. Rodino, Jr., Chairman, Committee on the Judiciary, September 4, 1985); "The Committee is most concerned that medically unstable patients are not being treated appropriately. There have been reports of situations where treatment was simply not provided". H.R.Rep. No. 99–241(I), 1986 U.S.C.C.A.N. 579, 604 (1985).

The text of the statute, codified at 42 U.S.C. § 1395dd, reads as follows:

§ 1395dd. *Examination and treatment for emergency medical conditions and women in labor*

(a) Medical screening requirement In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

(b) Necessary stabilizing treatment for emergency medical conditions and labor

(1) In general

If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either—

(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or

(B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

42 U.S.C. § 1395dd

More recently, the statute was amended to include other health care providers such as hospitals located in rural areas and off campus hospital outpatient departments. *See* 42 U.S.C. § 1395cc; 42 C.F.R. § 413.65.

## III. ANALYSIS

In Puerto Rico, unique health facilities known as CDTs exist. Under Puerto Rico Law, a CDT is defined as: an independent facility or one operated in conjunction with a hospital which provides community services for the diagnosis and treatment of ambulatory patients under the professional supervision of persons licensed to practice medicine, surgery or dentistry in Puerto Rico. 24 P.R. Laws Ann. § 331a(4). In other words, these are limited health facilities that offer only outpatient services such as dentistry, X-ray, and laboratory services. Defendant provides the following services at its CDT: Family medicine; general medicine; pediatrics; internal

medicine; gynecology; dentistry; emergency room services; pharmacy; laboratory; X-ray services; sonograms and electrocardiograms. As of this writing, there are approximately 192 CDTs in Puerto Rico. *See 2002 Directory of Health Facilities, Statistics Division,* published by the Puerto Rico Department of Health.

Because CDTs in Puerto Rico are the "first line of defense", as it were, in many rural communities, the Court must evaluate this situation carefully, keeping in mind the important public policy concerns inherent in this case. For most rural residents, their local CDT is the place where they receive the majority of their medical treatment. CDTs are rather unique in the sense that they do not offer inpatient hospital services, but do offer other services that a hospital by itself might not be able to offer, like dentistry services.

"The 'Centros de Diagnóstico y Tratamiento' and the 'Centros de Salud' form the primary level of the health system in Puerto Rico. They are deemed primary not only because it is the beginning point, or the point of entry, into the system, but also because it is the first and principal health custodian, both individually as well as community-wise. It is well recognized and accepted that the efficiency of a health system and the quality of its services are determined in accordance with the level of community health, and by the success in disease prevention. This great responsibility falls primarily at the primary level."

Legislative History, Law 52 of July 2, 1985 (Court translation).

Therefore, it is clear to the Court the importance of the CDTs, many of which operate as the only health facility in rural vicinities.

■ It has been well established, and Defendant correctly points out, that EM-

TALA only applies to participating hospitals who have executed a Medicare provider agreement with the federal government. *See Hardy v. New York City Health & Hosp. Corp.* 164 F.3d 789 (2d Cir.1999); *Cherukuri v. Shalala,* 175 F.3d 446, (6th Cir.1999); *Summers v. Baptist Medical Ctr. Arkadelphia,* 91 F.3d 1132 (8th Cir. 1996); *Jackson v. East Bay Hosp.,* 246 F.3d 1248, 1260 (9th Cir.2001); *Eberhardt v. City of Los Angeles,* 62 F.3d 1253 (9th Cir.1995); *Torres Otero v. Hospital General Menonita,* 115 F.Supp.2d 253 (D.Puerto Rico 2000) (Pieras, J.). In addition, it has been clearly established that the person seeking treatment must come to the emergency room in order for EMTALA apply. *See Lopez–Soto v. Hawayek,* 175 F.3d 170 (1st Cir.1999); *St. Anthony Hosp. v. U.S. Dept. of Health and Human Servs.,* 309 F.3d 680 (10th Cir.2002).

■ Defendant alleges that it is not a hospital within the meaning of the statute. Under normal circumstances, the Court would agree that a clinic, which is really what a CDT is more akin to, does not fall under the auspices of EMTALA. *See Roberts v. Virginia,* U.S. Brief, 1998 WL 649036 (1998) (EMTALA does not apply to physician's offices, clinics, nursing homes, hospices or departments of hospitals other than the emergency room) (*citing Baber v. Hospital Corp. of America,* 977 F.2d 872, 884 (4th Cir.1992)). However, a particular part of the clinic in question is special: it has an emergency room that operates on a 24–hour basis. The Court finds that this case hinges not on the literal wording of the statute, but rather on the end result— that the services provided by Defendant are the types of services that this law is clearly geared to cover. The statute is clear in the *nature* of the services it pertains to: it applies to emergency rooms, a facility that has traditionally provided 24–

hour services identical to the one in the case at bar.

■ While the Court can see that the CDT retains normal business hours for most of the other services it offers, such as laboratories and X-rays, and that it is limited like a clinic would be in this regard, its emergency room is run consecutively around the clock. Thus, if the Court were to hold today that CDTs in Puerto Rico are not covered under EMTALA, it would be doing a great public disservice to Puerto Rico's population as a whole, especially the population living in relatively rural areas whose closest health emergency service provider might be a CDT. In fact, the Court finds that this is exactly the type of case that this law was designed to apply to: namely indigent patients, the majority of which reside in the central part of the island, who oftentimes may not have any type of 24–hour emergency services near their residences, much less a hospital, and whose closest provider of services in such an emergency would be a CDTs' emergency room. Furthermore, the Court would find it unconscionable to exclude the 192 or so CDTs currently operating in Puerto Rico, and thereby effectively excluding the poor population who primarily rely on CDT services from the reaches of this all important law. The Court therefore finds that the spirit of EMTALA intended to cover 24–hour emergency room services, and consequently, this type of situation, as evidenced by its Legislative History. *See generally*, 1986 U.S.C.C.A.N. 3.

Defendant bases its argument on a directive that Gonzalo V. González, Director of Medicare, issued in 1999, which stated that for purposes of Medicare, CDTs would not be "classified as emergency rooms unless they are attached or hospital based". *See* Defendant's *Motion for Summary Judgment.* The relevant section reads as follows: "In accordance with the above, the 'Centros de Diagnóstico y Tratamiento CDT's' are not to be classified in Puerto Rico as Emergency Rooms unless they are attached or hospital based. **These facilities (CDT) for the purpose of Medicare are to be considered as medical offices**". (Emphasis added). However, the Court understands this directive to apply to the *processing* of Medicare payments; that is to say, this directive deals with how Medicare will bill for emergency room services that are rendered in CDTs. It has nothing to do with whether or not EMTALA obligations apply to a 24–hour emergency room operating in a CDT, and is therefore, inapposite to this discussion.

Defendant further avers, as a defense to Plaintiffs' opposition, which contained pictures that clearly show EMTALA requirements posted at the clinic, that the pictures "reference patient rights under local law", and that this "does not support their contention that EMTALA applies to facilities other than hospitals." Defendant's *Reply* at 9. However, even this statement belies Defendant's assertion. If it is true, as Defendant alleges, that EMTALA only applies to *hospitals* and no other health facilities, then the Court cannot fathom why the Corozal CDT would post EMTALA requirements when those requirements clearly only apply to "hospitals".[1] On the contrary, the Court finds the fact that these pictures are in plain view inside the CDT to be indicative of either of two things: that the CDT can be considered a hospital for purposes of EMTALA, or, in the alternative, that EMTALA applies to

1. Puerto Rico Law states: "All hospitals, whether public or private, shall have the obligation to post a sign in their emergency, first aid or stabilization rooms to make the people aware of their rights and guarantees with regard to this chapter." 24 P.R. Laws Ann. § 3116. (Emphasis added.)

# 302

other health facilities that offer around the clock emergency room services but which are not strictly a "hospital" within the meaning of the statute. The Court believes either interpretation is valid. *See also Correa,* 69 F.3d at 1191 (noting that the fact that a hospital's policy statement outlined the way that it intended to comply with EMTALA in its emergency room was sufficient for a jury to infer that the hospital was covered by EMTALA).

As a final matter, the Court addresses the issue raised by Plaintiffs, and refuted by Defendant, concerning the case of *Medero Diaz v. Grupo De Empresas De Salud,* 112 F.Supp.2d 222 (D.Puerto Rico 2000). In *Medero,* plaintiff brought an action under EMTALA, regarding an incident that occurred when one of the plaintiffs was brought to a municipal treatment center (CDT). The defendant in *Medero* was a private corporation that provided medical professional services, Grupo de Empresas de Salud ("Grupo"). Pursuant to the contract between defendant and the Municipality of San Juan, the owner of the CDT, the physicians employed by Grupo would evaluate and treat the patients who visited the CDT. The contract stated that Grupo was acting as an independent contractor, not as an employee of the Municipality, and that Grupo did not collect from, or bill to, any medical plan or Medicare.

The Court concluded that Grupo's contract required it to treat all indigent patients that came to the CDT, and that therefore, it appeared that they had a policy consistent with EMTALA, much like in the case at bar, but held that Grupo was not a "hospital" within the meaning of the statute because it was a medical corporation. However, unlike the case at bar, the Court explicitly found that plaintiffs had submitted no evidence that Grupo entered into a Medicare provider agreement with

the federal government, or that they received Medicare payments at all.

The Court declined to address the issue of whether CDTs or the Municipality could be a proper defendant in that action, as plaintiffs did not name them in their suit. Consequently, it would seem that it is possible for a CDT to be a proper defendant under EMTALA. In fact, *Medero* leaves open the issue of whether yet another entity that is neither a hospital nor a health provider, the Municipality, could be a proper defendant in an EMTALA claim. Therefore, the Court finds this case supports its holding today.

On March 6, 2003, the Court denied Defendant's motion for summary judgment based on the fact that Defendant had not explained to the Court how a Part A Medicare agreement differed from a Part B Medicare agreement, and how this distinction was relevant to its claim that EMTALA obligations did not apply to the Corozal CDT. As of this date, the Court has received no further information regarding Defendant's allegation that EMTALA obligations do not apply to Puerto Rico CDTs. In the absence thereof, the Court can find no statute or case that makes the distinction Defendant advances, and can only conclude that EMTALA obligations apply to the Corozal CDT emergency room, which would fall under the 99% of medical providers covered by EMTALA, a more appropriate outcome for this case. In fact, case law has alluded to a facility's Medicare agreements and payments in more general terms than Defendant has advanced. *See Jackson,* 246 F.3d at 1260 (holding that EMTALA applies to hospitals which "choose to participate in Medicare"); *Cherukuri,* 175 F.3d at 448 (EMTALA applies to hospitals "that accept Medicare patients"); *Hardy,* F.3d at 792 (EMTALA limited to those that "participate in the federal Medicare program").

The Court can find no statute or case that makes the distinction Defendant poses before the Court, and therefore finds it is inapposite.

## IV. CONCLUSION

Because the Court is moved by the great public policy concerns in this case, it finds that the spirit of EMTALA intended for the type of services rendered in the case at bar to fall under its auspices, and therefore **HOLDS** that EMTALA **SHALL** apply to Puerto Rico CDTs that render emergency room medical services on a twenty-four hour basis. However, the Court clarifies that the holding it renders today is limited: it does not apply to all CDT services as a whole, but only to emergency rooms in CDTs that render emergency medical services on a 24–hour basis.

**IT IS SO ORDERED.**