Ivan PEREZ, individually and as Administrator of the Estate of Eulalia Perez, and Irma Perez, Plaintiffs,

v.

BROOKDALE UNIVERSITY HOSPITAL & MEDICAL CENTER, et al., Defendants.

No. 12–CV–5672.

United States District Court,
E.D. New York.

Nov. 8, 2013.

Wanda Sanchez Day, Law Office of Wanda Sanchez Day, PC, for Plaintiffs.

Gregory John Radomisli, Martin, Clearwater & Bell, LLP, for Defendant Brookdale University Hospital & Medical Center.

Dennis John Dozis, Kaufinan Borgeest & Ryan, LLP, for Defendant Beth Abraham Health Services.

Eugene Terrance Boule, Wilson, Elser, Moskowitz, Edleman & Dicker, LLP, for Defendant Christian Ambulette, Inc.

John Charles O'Brien, Heidell, Pittoni, Murphy & Bach, LLP, for Defendant Christian Ambulette, Inc.

## MEMORANDUM, ORDER & JUDGMENT

JACK B. WEINSTEIN, Senior District Judge:

I.  Introduction ................................................... 175

II.  Facts ........................................................ 176

III.  Law ......................................................... 177

IV.  Application of Law to Facts ............................... 177

V.  Conclusion ................................................... 178

## I. Introduction

Ivan Perez, individually and as administrator of the estate of Eulalia Perez ("Mrs. Perez"), and Irma Perez sue Brookdale University Hospital & Medical Center; Brookdale Emergency Services; Beth

Abraham Health Services; Accentcare, Inc.; Christian Ambulette, Inc.; Dr. Siamack Nemazie; and various "unknown and unidentified physicians." The sole federal claim is brought on behalf of Mrs. Perez's estate, alleging that Brookdale University Hospital ("Brookdale") violated the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. Ivan and Irma, both individually and on behalf of Mrs. Perez's estate, also assert state-law claims of wrongful death and negligence against all defendants.

Brookdale has filed a motion for summary judgment on the EMTALA claim, urging that Mrs. Perez's discharge—three weeks after her admission to the hospital—fell outside the scope of the federal statute. The motion for summary judgment is granted. The exercise of supplemental jurisdiction over the remaining state-law claims is declined.

## II. Facts

Mrs. Perez arrived at Brookdale's Emergency Room on November 16, 2010, complaining of shortness of breath, chest pain, a fever, and a persistent cough. Pls.' Ex. Z2. She was screened, admitted as a patient, and diagnosed with pneumonia the following day. Pls.' Ex. Z3.

During the next two weeks, Mrs. Perez received treatment for pneumonia and several other medical problems identified by Brookdale's staff. Pls.' Ex. Z3–Z4; Pls.' Ex. Y2–Y3. Medical records indicate that she suffered from sepsis, kidney failure, and a persistent urinary tract infection, which Brookdale doctors and nurses treated with a rotating battery of antibiotics. *Id.* Plaintiffs acknowledge that Mrs. Perez was monitored and received prescribed drugs during this period. Hr'g Tr. 15–16, Nov. 7, 2013. Plaintiffs' expert opines that treatment was inappropriate given her medical conditions. *Id.;* Pls.' Ex. Y4–Y5.

Irma and Ivan, Mrs. Perez's children, also report discovering their mother lying in her own urine and excrement on multiple occasions when they would come to visit. Pls.' Ex. V2; Pls.' Ex. W2.

By November 29, Mrs. Perez's condition had "markedly improved." Pls.' Ex. 138. Brookdale doctors recommended that she be discharged to a rehabilitation center; on November 30, a hospital social worker discussed this recommendation with Mrs. Perez through an interpreter. Ex. 142. Mrs. Perez was "in agreement with the plan." *Id.* Her daughter confirms that she assented to her mother's planned transfer. Pls.' Ex. V3. Mrs. Perez still had a low fever, redness, and "echymotic [*sic*] areas" (bruising) at this time. Pls.' Ex. 140.

Plaintiffs have presented no evidence that the planned late-November transfer was medically risky. Nor has plaintiffs' medical expert opined as much. *See* Pls.' Ex. Y3 (noting only that decedent "clinically improved" before "deteriorat[ing]" again in early December).

On the afternoon of December 1, while awaiting "bed clearance" from the receiving rehabilitation center, Pls.' Ex. 144, Mrs. Perez vomited in bed, Pls.' Ex. Z7. This development prompted hospital staff to put Mrs. Perez's discharge on hold. *Id.; see also* Pls.' Ex. V4 ("Sometime in early December 2010, I was later informed that my mother could not be discharged because her condition worsened."). There is evidence that Mrs. Perez remained feverish and continued to suffer from infections throughout the next week. Pls.' Ex. Y3–Y4; Pls.' Ex. Z7–Z8. Continuing health issues notwithstanding, Brookdale discharged Mrs. Perez to her daughter's home on December 7. Pls.' Ex. Z9.

Plaintiffs assert that the discharge occurred despite Mrs. Perez's protests and without notice to her children: "Defen-

dants removed the [catheter], the IV and the monitors and [Mrs.] Perez was taken out of Brookdale hospital in nothing but a hospital gown and a wheelchair and dropped ... on the steps of her daughter's home." Pls.' Ex. Z9.

Approximately five hours after her discharge, Mrs. Perez "began screaming and then began to convulse." Pls.' Ex. V4. Emergency personnel were unable to find Mrs. Perez's pulse and rushed her to Jamaica Hospital. *Id.* Doctors there treated her "with broad spectrum antibiotics for presumed pneumonia, septic shock, possible C–Diff colitis ... and elevated cardiac markers." Pls.' Ex. Y3–Y4. Despite "aggressive measures," Jamaica Hospital was unable to save her. *Id.* Mrs. Perez died on December 9, less than 48 hours after being discharged by Brookdale. *Id.*

### III. Law

EMTALA was enacted in 1986 to counter " 'patient dumping,' the practice of refusing to provide emergency medical treatment to patients unable to pay, or transferring them before emergency conditions [are] stabilized." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 792 (2d Cir.1999).

The statute imposes two relevant obligations on a hospital receiving an emergency patient. First, the hospital:

> must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition ... exists.

42 U.S.C. § 1395dd(a). Second, if a hospital determines that an individual has an "emergency medical condition," it:

> must provide ...—

> (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition....

42 U.S.C. § 1395dd(b). A patient is "stabilized" when "no material deterioration of the [emergency medical] condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility ...." § 1395dd(e)(3)(b).

EMTALA creates a private right of action against a hospital for individuals who suffer "personal harm as a direct result of a participating hospital's violation of [an EMTALA] requirement." § 1395dd(d)(2). Available are "those damages ... for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate." *Id.* The remedy supplements a hospital's ordinary obligations under state and local law. § 1395dd(f); *Hardy,* 164 F.3d at 793.

### IV. Application of Law to Facts

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. CIV. P. 56(c).

Viewing all facts and inferences in the light most favorable to the plaintiffs, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the EMTALA claim fails. While there is a significant dispute as to whether Mrs. Perez's November 7 discharge was medically appropriate, there is no question that Brookdale properly screened Mrs. Perez when she arrived at Brookdale's emergency department on No-

vember 16. The plaintiffs' own allegations and evidence demonstrate that she was then "stabilized" within the meaning of the statute in late November. Plaintiffs' expert has not suggested that a "material deterioration" in Mrs. Perez's emergency condition would have occurred if she had been transferred to the rehabilitation center in late November, as originally planned. *See* § 1395dd(e)(3)(b) (defining "stabilized"). Although Plaintiffs maintain that Mrs. Perez was not "treated fairly or equally ... simply because [Brookdale viewed her] from the very beginning as a charity case," Hr'g Tr. 18, Nov. 8, 2013, nothing in Plaintiffs' comprehensive filings would allow a reasonable fact-finder to conclude that she had not been medically stabilized at some time before her three week hospital stay ended in discharge.

EMTALA required Brookdale to properly screen Mrs. Perez and provide "such further medical examination and such treatment as may be required to stabilize the [emergency] medical condition" with which she arrived at the hospital. § 1395dd(b)(1)(A). It satisfied its duties under EMTALA once it stabilized her. Any malpractice, deterioration, or new disease acquired in the hospital was outside EMTALA's concern. The appropriate forum in which to pursue state law claims, such as these for negligence, is a state court.

There is no need to consider Brookdale's contention that "a hospital has satisfied its responsibilities" under EMTALA as soon as it "admits that individual as an inpatient in good faith in order to stabilize the emergency medical condition." Def.'s Mem. of Law in Supp. of Summ. J. Mot., at 5; Hr'g Tr. 9–11, Nov. 8, 2013. *Compare* 42 C.F.R. § 489.24(d)(2)(i) ("hospital has satisfied its special responsibilities under [EMTALA]" once it "admits that individual as an inpatient in good faith") *with*

*Moses v. Providence Hosp. and Medical Centers, Inc.,* 561 F.3d 573, 583 (6th Cir. 2009) (rejecting the argument of defendant as "contrary to EMTALA's plain language"). Brookdale fulfilled its EMTALA duties when Mrs. Perez's condition was stabilized in late November, before her discharge.

## V. Conclusion

The hospital's motion for summary judgment on plaintiffs' EMTALA claim is granted.

Supplemental jurisdiction will not be exercised over plaintiffs' remaining state claims against all defendants. No relevant factor supports the exercise of federal jurisdiction. 28 U.S.C. § 1367(c)(3); *Ford v. D.C. 37 Union Local 1549,* 579 F.3d 187, 188 (2d Cir.2009) ("In the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims.") (citation omitted).

All claims against all parties are dismissed. No costs or disbursements are awarded.

SO ORDERED.