Wright v Stephens (2025 NY Slip Op 03416)

Wright v Stephens

2025 NY Slip Op 03416

Decided on June 6, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 6, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., BANNISTER, GREENWOOD, NOWAK, AND KEANE, JJ.

193 CA 23-01586

[*1]LEW WRIGHT, AS EXECUTOR OF THE ESTATE OF SANDRA RAMSEY, DECEASED, AND JAMES A. RAMSEY, AS EXECUTOR OF THE ESTATE OF ERNEST H. RAMSEY, DECEASED, PLAINTIFFS-APPELLANTS,
v
VICKY K. STEPHENS, P.A., DELPHI HEALTHCARE, PLLC, DEFENDANTS-RESPONDENTS, ET AL., DEFENDANTS. (APPEAL NO. 1.) 

BLACK, LYLE & HABBERFIELD, LLP, OLEAN (KEVIN M. HABBERFIELD OF COUNSEL), FOR PLAINTIFFS-APPELLANTS. 
HIRSCH & TUBIOLO, P.C., PITTSFORD (BRYAN S. KORNFIELD OF COUNSEL), FOR DEFENDANTS-RESPONDENTS.
THE TARANTINO LAW FIRM, LLP, BUFFALO (MARYLOU K. ROSHIA), FOR DEFENDANTS JANET K. REISMAN, R.N., JONES MEMORIAL HOSPITAL, AND THE MEMORIAL HOSPITAL OF WILLIAM F. AND GERTRUDE F. JONES, INC., DOING BUSINESS AS JONES MEMORIAL HOSPITAL.

 Appeal from a judgment of the Supreme Court, Allegany County (Thomas P. Brown, A.J.), entered March 3, 2023. The judgment, insofar as appealed from, dismissed the amended complaint, upon a jury verdict, against defendants Vicky K. Stephens, P.A., and Delphi Healthcare, PLLC. 
It is hereby ORDERED that said appeal insofar as taken by plaintiff Lew Wright, as executor of the estate of Sandra Ramsey, deceased, is dismissed, and the judgment insofar as appealed from is reversed on the law without costs, the amended complaint as asserted by plaintiff James A. Ramsey, as executor of the estate of Ernest H. Ramsey, deceased, is reinstated against defendants Vicky K. Stephens, P.A., and Delphi Healthcare, PLLC, and a new trial is granted.
Memorandum: In this medical malpractice and wrongful death action, plaintiffs appeal or purport to appeal, in appeal No. 1, from a judgment dismissing the amended complaint against defendants Vicky K. Stephens, P.A., and Delphi Healthcare, PLLC (Delphi) (collectively, Delphi defendants) and, in appeal No. 2, from a judgment dismissing the amended complaint against defendants Janet K. Reisman, R.N., Jones Memorial Hospital, and the Memorial Hospital of William F. and Gertrude F. Jones, Inc., doing business as Jones Memorial Hospital (JMH) (collectively, JMH defendants).
Sometime between 8:00 p.m. and 9:41 p.m. on July 17, 2013, Ernest H. Ramsey (decedent) and his wife, Sandra Ramsey (wife), presented to the emergency room at JMH for decedent to be treated. A few hours later, at 11:26 p.m., decedent coded and was pronounced dead. The official cause of death was listed as cardiomyopathy, with morbid obesity as a contributing factor.
The wife and James A. Ramsey (plaintiff), as executor of decedent's estate, commenced this action against defendants. The Delphi defendants and the JMH defendants moved separately [*2]for summary judgment dismissing the amended complaint against them. Supreme Court denied the Delphi defendants' motion and denied in part the JMH defendants' motion. The Delphi defendants and the JMH defendants appealed from the order denying those motions, and we affirmed that order for reasons stated in the court's decision (Ramsey v Stephens, 191 AD3d 1242, 1243 [4th Dept 2021]).
The matter proceeded to trial, with a first trial ending in a mistrial for reasons unrelated to the merits, and a second trial resulting in dismissal of the amended complaint. Following the verdict, but before the judgments on appeal were entered, the wife passed away. The attorney who jointly represented the wife and plaintiff filed notices of appeal from both judgments on their behalf.
As a preliminary matter, we note that there are procedural issues relating to the wife's death that affect our subject matter jurisdiction, and those issues cannot be waived and may be addressed sua sponte (see Henry v New Jersey Tr. Corp., 39 NY3d 361, 371 [2023]; Davis v State of New York, 64 AD3d 1197, 1197 [4th Dept 2009], lv denied 13 NY3d 717 [2010]). Although the wife died before the judgments on appeal were entered, i.e., in March 2023 and May 2023, respectively, no party was substituted for her until the court issued an order of substitution in August 2024, thereby amending the caption to substitute in the wife's place plaintiff Lew Wright, as executor of the wife's estate, which order was filed after the notices of appeal and briefs in these appeals were filed. No new briefs or notices of appeal were filed after the order of substitution was filed.
It is well established that the death of a party divests a court of jurisdiction until a proper substitution is made (see Vapnersh v Tabak, 131 AD3d 472, 473-474 [2d Dept 2015]; Wood v Dolloff, 52 AD3d 1190, 1190 [4th Dept 2008]), and "[t]he death of a party terminates the authority of the attorney for that person to act on [their] behalf" (Aurora Bank FSB v Albright, 137 AD3d 1177, 1178 [2d Dept 2016] [internal quotation marks omitted]; see Vapnersh, 131 AD3d at 474). While the order of substitution provided us with jurisdiction to preside over these appeals, it did not change the fact that, at the time the notices of appeal were filed on behalf of the deceased wife, they were filed without any authority by the attorney to act on her behalf. Under these circumstances, the wife's attorney "lacked the authority to act for the deceased [wife], and [any] purported appeal taken on behalf of the deceased [wife] must be dismissed" (Aurora Bank FSB, 137 AD3d at 1178 [emphasis added]). Even after substitution was made, no amended notices of appeal were ever filed. It is well settled that "[t]he filing of a notice of appeal confers jurisdiction upon an appellate court" (Matter of Espinoza v Berbary, 288 AD2d 934, 934 [4th Dept 2001]). Inasmuch as the notices of appeal filed on behalf of the deceased wife are nullities and no notices of appeal have ever been filed on behalf of Wright, as executor of her estate, we conclude that this Court lacks jurisdiction to hear any appeal purportedly taken on behalf of Wright, as executor of the deceased wife's estate (see Aurora Bank FSB, 137 AD3d at 1178-1179; see e.g. Warran v Cole, 29 AD2d 988, 988 [2d Dept 1968], affd 26 NY2d 803 [1970]; Constable v Staten Is. Univ. Hosp., 221 AD3d 952, 953 [2d Dept 2023]; see generally Vicari v Kleinwaks, 157 AD3d 975, 976-977 [2d Dept 2018]). We therefore dismiss the appeals in appeal Nos. 1 and 2 insofar as they purport to be taken by Wright, as executor of the wife's estate.
We nevertheless address the appeals from plaintiff on the merits inasmuch as the notices of appeal in appeal Nos. 1 and 2 were also filed on his behalf and are not affected by the jurisdictional issues related to the wife's estate (see Green v Maimonides Med. Ctr., 172 AD3d 824, 825 [2d Dept 2019]; Neuman v Neumann, 85 AD3d 1138, 1139 [2d Dept 2011]; Arena v Manganello, 31 AD2d 540, 540 [2d Dept 1968]), and we conclude that, contrary to defendants' assertions, plaintiff's contentions in these appeals are properly before us regardless of the court's determination of the CPLR 4404 (a) motion made on behalf of the wife and plaintiff seeking to set aside the verdict (see CPLR 5501 [a] [1], [3]; cf. Knapp v Finger Lakes NY, Inc., 184 AD3d 335, 336-337 [4th Dept 2020], lv dismissed 36 NY3d 963 [2021]), and the fact that plaintiff did not appeal from the court's prior nonfinal order disposing of defendants' motions for summary judgment (see CPLR 5501 [a] [1]; Zaepfel v Town of Tonawanda, 227 AD3d 1387, 1389 [4th Dept 2024]; see generally Bonczar v American Multi-Cinema, Inc., 38 NY3d 1023, 1025-1026 [2022], rearg denied 38 NY3d 1170 [2022]).
Plaintiff contends with respect to both appeals that the court erred in limiting his proof regarding the vicarious liability of JMH to only the named individual defendants (see generally [*3]Braxton v Erie County Med. Ctr. Corp., 208 AD3d 1038, 1042 [4th Dept 2022]). We agree. Based on the authority of Braxton, we conclude that the court erred in precluding plaintiff from introducing evidence of negligence by unnamed or unidentified employees or contractors of JMH (see id.; see generally Matter of Elsa R. [Gloria R.], 101 AD3d 1688, 1688-1689 [4th Dept 2012], lv denied 20 NY3d 862 [2013]).
Plaintiff further contends with respect to both appeals that the court erred in precluding him from calling an expert in electronic medical records in order to explain the audit trail regarding decedent's medical records. We again agree. Initially, audit trails are software-generated documents that "generally show[ ] the sequence of events related to the use of a patient's electronic medical records; i.e., who accessed the records, when and where the records were accessed, and changes made to the records" (Vargas v Lee, 170 AD3d 1073, 1076 [2d Dept 2019]). Such audit trails are subject to discovery where, as here, a plaintiff establishes legitimate questions regarding whether medical records have been withheld or altered (see id. at 1077; cf. Harms v TLC Health Network, 215 AD3d 1295, 1296 [4th Dept 2023]; Punter v New York City Health & Hosps. Corp., 2019 NY Slip Op 34239[U], *2-3 [Sup Ct, NY County 2019], affd 191 AD3d 563 [1st Dept 2021]).
Even assuming, arguendo, that the court properly determined that the expert testimony would have been inadmissible insofar as it pertained to an unpleaded fraud claim (see generally Campos v Beth Israel Med. Ctr., 80 AD3d 642, 642-643 [2d Dept 2011]) or was not supported by the records (see Zammiello v Senpike Mall Co., 5 AD3d 1001, 1002 [4th Dept 2004]), we conclude that the expert testimony would have been relevant and admissible to the extent that it established the time at which decedent initially presented to JMH's emergency room and whether there was a significant delay in treatment that violated JMH's own protocols.
Generally, "[t]he determination whether to permit expert testimony is a mixed question of law and fact addressed primarily to the discretion of the trial court . . . , and the court's determination should not be disturbed absent an abuse of discretion" (Curtin v J.B. Hunt Transp., Inc. [appeal No. 2], 79 AD3d 1608, 1610 [4th Dept 2010] [internal quotation marks omitted]; see Maggio v Doughtery, 130 AD3d 1446, 1446-1447 [4th Dept 2015]). Given the relevance of such information to the critical allegation concerning the delay in treatment and its effect of such a delay on decedent's medical outcome, we conclude that the court abused its discretion in precluding such testimony (see Byrnes v Satterly, 85 AD3d 1711, 1712 [4th Dept 2011]). " 'Because the court precluded plaintiff from introducing any evidence [related to] a theory that might have resulted in a different verdict,' " we conclude that such testimony should not be precluded in a new trial (id.).
We further agree with plaintiff in both appeals that the court's "loss of chance" instruction was erroneous and warrants reversal. As this Court has held since at least 2011, a "loss of chance instruction" is "entirely appropriate for . . . omission theories" in medical malpractice actions (Wild v Catholic Health Sys., 85 AD3d 1715, 1717 [4th Dept 2011], affd 21 NY3d 951 [2013]). Although the Pattern Jury Instructions did not include a loss of chance pattern charge until 2023, i.e., after the second trial in this matter took place in December 2022, this Court had already issued numerous decisions prior to December 2022 indicating that "the loss of chance theory of causation . . . requires only that a plaintiff 'present evidence from which a rational jury could infer that there was a "substantial possibility" that the patient was denied a chance of the better outcome as a result of the defendant's deviation from the standard of care' " (Leberman v Glick, 207 AD3d 1203, 1206 [4th Dept 2022] [emphasis added], quoting Clune v Moore, 142 AD3d 1330, 1331-1332 [4th Dept 2016]; see Wolf v Persaud, 130 AD3d 1523, 1525 [4th Dept 2015]; cf. Mi Jung Kim v Lewin, 175 AD3d 1286, 1288 [2d Dept 2019]).
Here, the court instructed the jury that, in order for plaintiff to recover under a loss of chance theory, it was plaintiff's burden to establish that the act or omission alleged was a "substantial factor in bringing about the death." The court also instructed the jury that, if it should find that "there was a substantial probability that the decedent . . . would have survived . . . if he had received proper treatment," then it could find that defendants' alleged negligence was a "substantial factor" in causing his death (emphasis added).
We agree with plaintiff that the charge, as given, did not " 'adequately convey[ ] the sum and substance of the applicable law' " to the jury (Gumas v Niagara Frontier Tr. Metro Sys., [*4]Inc., 189 AD3d 2095, 2096 [4th Dept 2020]; see Rakoff v New York City Dept. of Educ., 110 AD3d 780, 780-781 [2d Dept 2013]). The primary issue at trial was whether defendants deviated from accepted standards of care in failing to timely treat decedent. Inasmuch as the "court did not adequately charge the jury concerning" the appropriate standard to determine that issue, we conclude that "the court's failure to define [the correct] standard for the jury" cannot be considered harmless under the circumstances of this case (McAndrews v City of New York, 100 NY2d 603, 605 [2003]; see Cannizzo v Wijeyasekaran, 259 AD2d 960, 961 [4th Dept 1999]). We therefore reverse the judgments in appeal Nos. 1 and 2 insofar as appealed from by plaintiff, reinstate the amended complaint as asserted by him against all defendants, and grant a new trial with respect to plaintiff only.
Plaintiff further contends that the court erred in granting a directed verdict dismissing their claim under the Emergency Medical Treatment and Active Labor Act ([EMTALA] 42 USC § 1395dd) against JMH, which was premised upon the hospital failing to follow its triage policy by registering decedent prior to triage. We reject that contention. The purpose of the statute is to "combat 'patient dumping' by hospitals based on a patient's financial condition or lack of health insurance," i.e., it prevents hospitals from refusing to provide any initial screening or refusing to stabilize a patient presenting to an emergency room (Lear v Genesee Mem. Hosp., 254 AD2d 707, 708 [4th Dept 1998], lv dismissed 92 NY2d 1045 [1999]; see Hardy v New York City Health & Hosps. Corp., 164 F3d 789, 792 [2d Cir 1999]; Brenord v Catholic Med. Ctr. of Brooklyn & Queens, Inc., 133 F Supp 2d 179, 184 [ED NY 2001]). Consistent with its limited purpose to prevent patient dumping, "EMTALA is not a federal malpractice statute" and "claims of misdiagnosis or inadequate treatment are left to the state malpractice arena" (Lear, 254 AD2d at 708 [internal quotation marks omitted]; see Hardy, 164 F3d at 792-793). In other words, "EMTALA does not protect a patient from improper diagnosis or treatment," but instead creates a cause of action for a complete "failure to treat" (Lear, 254 AD2d at 708 [internal quotation marks omitted]; see Lidge v Niagara Falls Mem. Med. Ctr., 17 AD3d 1033, 1035 [4th Dept 2005]). Here, the evidence at trial established that decedent was, in fact, treated by JMH and, as a result, the EMTALA claim against JMH was properly dismissed.
Based on our determination, we do not address plaintiff's remaining contentions.
Entered: June 6, 2025
Ann Dillon Flynn
Clerk of the Court